IN RE APPLICATION OF THEODOR HERZL HERMAN
FOR REINSTATEMENT AS AN ATTORNEY AT LAW.

197 N. W. 2d 241.

April 28, 1972—No. 39200.

*Peter Dorsey* and *Curtis L. Stine,* for petitioner.
*R. B. Reavill,* Administrative Director on Professional Responsibility.
*Neil A. Riley,* amicus curiae.

PER CURIAM.
Petitioner was disbarred by order of this court on December 6, 1963,

as a result of his conviction of the crime of swindling, Minn. St. 1961, § 614.11, a felony.[1] He now petitions for reinstatement.

Petitioner was convicted of swindling in selling a fictitious contract for deed to the health, welfare, and profit sharing plan of a corporate client. He was sentenced to an indeterminate period of up to 5 years, the maximum penalty under the swindling statute. He was discharged from the State Prison on February 17, 1967, having served the full term of the sentence, less the usual good-time credits.

The swindle for which he was indicted, however, was admittedly only one of many, commencing as early as 1957, or even 1954. His victims included a legal secretary,[2] a rabbi,[3] and others who reposed trust in him other than in an attorney-client relationship.[4] To the extent that remorse is represented either by communication with victims or efforts at restitution, it is clear that petitioner's only affirmative act of that nature has been restitution, in monthly payments, to the rabbi.

The decisive inquiry on this petition, as stated in In re Application of Smith for Reinstatement, 220 Minn. 197, 200, 19 N. W. 2d 324, 326 (1945), is "whether the applicant is of such good moral character that he should be readmitted to the office of attorney and recommended to the public as a trustworthy person fit to be consulted in matters of confidence." We conclude that this has not been established, and accordingly deny the petition.

A joint hearing on petitioner's application was conducted by the Committee on Professional Responsibility and Discipline of the Minnesota State Bar Association and the Screening Committee of the Ethics Committee of the Hennepin County Bar Association. The matter has, by stipulation, been submitted to this court on the record of that hearing and without reference to a fact-finding referee. The Board of Governors

---

[1] In re Application for Discipline of Herman, 267 Minn. 547, 125 N. W. 2d 169 (1963).

[2] He took $7,500 from a legal secretary without acquiring a valid contract for deed on her behalf. He reported to her that interest was credited to her account and that she should report those sums on her individual income tax returns, representations that were false.

[3] The number of contracts and the aggregate amount of which the rabbi was swindled does not appear from this record except that it affirmatively appears that there is a balance now owing in the amount of $12,890.

[4] The aggregate amount of these swindles was not less than $250,000, possibly substantially more.

of the Minnesota Bar Association and the Hennepin County Bar Association adopted the adverse recommendations of their respective committees and, pursuant to those recommendations, have filed objections to petitioner's application for reinstatement.

Petitioner has undertaken to show that the lack of character which prompted his criminal conduct has now so changed that he has earned anew the trust and confidence once so clearly forfeited. His respected counsel attributes petitioner's prior conduct to his "massive ego which reached such proportions as to constitute a psychological aberration," manifested by an inordinate compulsion for materialistic success and an unwillingness to admit mistake.[5] A psychiatrist, Dr. Alan Challman, stated by affidavit that petitioner suffered from "[s]ocial maladjustment without manifest psychiatric disorder—i.e. Dyssocial behavior." Dr. Challman did not state that petitioner was rehabilitated. Although he stated that "there is a natural tendency for problems of this sort to diminish and sometimes completely disappear with the passage of time and the acquisition of greater personal maturity," Dr. Challman added that "psychiatric interviews contribute little to determining the presence or absence, or the waxing or waning, of the character weakness, due to the reliance we must place on personal reports which are naturally biased."

Petitioner's rehabilitation as a constructive member of society has been attested by several respected persons in the community who have had a close relationship with him. Chief among them is a respected judge of the Hennepin County Municipal Court, who knew petitioner professionally when both were in private practice and extended a hand of friendship to petitioner during and after his incarceration. Together they formed Amicus, Inc., a nonprofit organization which functions,

---

[5] Petitioner testified that shortly after his admission to the practice in 1945 he had undertaken to sell legitimate contracts for deed in the expectation that persons who would trust him in their business affairs would become his clients in their professional affairs. He testified that the vendees of a number of those contracts later defaulted but that he was so averse to admitting his mistakes in business judgment that he attempted to cover the defaults with his own personal funds. It was only after the tide of these defaults in legitimate contracts engulfed him, he states, that he turned to the device of illegtimate contracts to achieve his objectives. No such explanation was offered in allocution at the time that he entered his plea of guilty to the crime of swindling. The explanation does not, in any event, explain away his victimization of others simply to preserve his own self-esteem.

through use of volunteer friends, in assisting felons in their adjustment to society upon discharge from prison. Petitioner is now employed as a case editor for a leading lawbook publisher but devotes much of his time to the promotion of this worthy project. The judge generously credits petitioner with a substantial share of its success. He is unreserved in his support of petitioner as a man who has "learned that there are greater goals in life than acquiring dollars" and who is "now imbued with the spirit of trying to do something for other people, not just for himself."

Seven persons similarly interested in petitioner from their association with him in Amicus, Inc., likewise attest to a great change in petitioner's character and personality. Three of the views expressed are typical. A prison chaplain gave his opinion that petitioner "is a conscientious man who has been rehabilitated and is at the present time possessed of a high moral character qualifying him for a position requiring the greatest honesty and morality." A lawyer in government service, who has known petitioner intimately both before and after his conviction, observed that petitioner "has undergone a substantial and favorable change in outlook, personality and attitude; that he no longer has the compelling need to live in an extravagant, flamboyant and materialistic manner; that he appears to have effected a vocational, social and personal rehabilitation; [and that he is] well qualified to engage in a profession requiring trust, honesty, devotion and morality." A businessman with a longtime interest in penology stated that petitioner has "displayed a realization of his wrongdoing * * *, * * * has proven himself to be a reliable and honest person since that time," and is "well qualified for a position requiring the highest degree of honesty and morality."

Three lawyers in active practice and not associated with Amicus, Inc., tendered favorable affidavits in support of the petition. The two attorneys who represented petitioner at the time of his conviction stated that they had seen a "complete rehabilitation [in his] character and outlook." One lawyer, like others, referred to a substantial change in petitioner's attitude in that "his obsession with material goods no longer dominates his life nor is he as egotistical as he was prior to his incarceration." A fourth lawyer submitted an endorsement by letter, reciting the worthiness of the Amicus project in which petitioner is so active and, without stating their nature or extent, stated that petitioner had been "reliable" in his dealings with him.[6]

---

[6] The several disinterested lawyers serving on the Committee on Professional Responsibility and Discipline of the Minnesota State Bar Asso-

Petitioner does not seek reinstatement for the purpose of entering into the private practice of law, the reasons for which are not without significance. It was stated that his "practical problem would be of getting clients." Because this was not related to a lack of competence, we are left with the implication that potential clients would be discouraged by a lack of confidence in his integrity. Although he thought that he could serve well by employment or association with other lawyers who have an established clientele, notably no lawyer, including those who supported his application, has been heard to say that he would offer petitioner such employment or association. "[T]he likelihood of the opportunity to practice," in petitioner's own words, "would be quite remote."[7]

We do not, in denying this petition for reinstatement, disparage the opinions of the thoughtful persons who have expressed their faith in and friendship for petitioner. Nor do we reject, out of hand, evidence that petitioner has achieved a marked change of character or personality. Ours, however, is the burden of assuring the public that, if petitioner were today reinstated as an attorney, clients could submit their most intimate and important affairs to him with complete confidence in both his competence and fidelity. We are not persuaded that to do so would be in the public interest.

Petition denied.

MR. JUSTICE ROGOSHESKE took no part in the consideration or decision of this case.

---

ciation and the Screening Committee of the Ethics Committee of the Hennepin County Bar Association who heard petitioner's presentation obviously were not fully persuaded as to the rehabilitation of petitioner. Only one among them voted in favor of recommending his reinstatement.

[7] His present employment as a case report editor, in which his performance was highly commended by his employer, is not conditioned upon his reinstatement.