In re the Petition for Reinstatement of David J. TRYGSTAD as an Attorney at Law of the State of Minnesota.

No. C5–83–1031.

Supreme Court of Minnesota.

July 19, 1991.

William P. Scott, Scott Law Offices, Pipestone, and Clarence E. Hagglund Law Firm, Minneapolis, for appellant.

William J. Wernz, Director of Office of Lawyers Professional Responsibility, Betty M. Shaw, Sr. Asst. Director, St. Paul, for respondent.

**PER CURIAM.**

We accept the recommendation of the Minnesota Lawyers Professional Responsibility Board to reinstate petitioner to the practice of law in this state.

■■■ David J. Trygstad, the petitioner, was disbarred by order of this court on August 9, 1983. The disbarment was based on a 1983 conviction in South Dakota on two felony counts of conspiracy to distribute cocaine. "While a court should be slow to disbar, it should be even more cautious in re-admitting an attorney to a position of trust." *In re Smith*, 220 Minn. 197, 200, 19 N.W.2d 324, 326 (1945). The test for reinstatement is whether the lawyer "has undergone such a moral change as now to render him a fit person to enjoy the public confidence and trust once forfeited." *Smith, id.* at 201, 19 N.W.2d at 326.

■■■ Among the factors to be considered are: (1) the present moral fitness of the petitioner as demonstrated by his consciousness of the wrongfulness of his conduct and his conduct subsequent to disbarment; (2) the time that has elapsed since disbarment; (3) the seriousness of the original misconduct; and (4) the petitioner's present competency and legal skills. *In re Wegner*, 417 N.W.2d 97, 99 (Minn.1987).

David Trygstad was admitted to the bar in both South Dakota and Minnesota in 1969. For the first 10 years he practiced law in Pipestone, Minnesota. Trygstad liked drinking. He had a habit of letting office deadlines approach and then, with the use of amphetamines, putting in long hours to catch up. In time he became an abuser of drugs and alcohol. In 1979 Trygstad moved to Sioux Falls, South Dakota, where he practiced as a sole practitioner.

In 1982 Trygstad began using cocaine and, during that year, became involved in a plan to sell cocaine. Trygstad obtained the drug from, he says, Robert Reutter, a lawyer acquaintance. Trygstad then arranged for his friend and former client Richard Cole to sell the cocaine. Cole would give the sale proceeds to Trygstad who, in turn, would pay the supplier. On January 9, 1983, Trygstad and Cole were arrested following the sale of 4 ounces of cocaine to an undercover agent for $10,000 in marked bills, of which $9,600 were in Trygstad's possession.

When arrested, Trygstad cooperated with the authorities. He agreed to plead guilty to two felony counts and to identify and cooperate in convicting the supplier; in return, the state agreed to recommend a sentence of two *concurrent* 5–year terms. After entering his plea, Trygstad was disbarred in South Dakota. While waiting to be sentenced, he completed an in-patient chemical dependency program at River Park, a South Dakota treatment center. The trial court rejected the recommendation for concurrent sentences and sentenced Trygstad to two *consecutive* 5–year terms. On March 11, 1983, he entered the penitentiary.

In March 1984, Trygstad testified at the trial of Robert Reutter, identifying Reutter as the cocaine supplier. The same day that the jury brought in a guilty verdict against Reutter, Trygstad's sentence was commuted to two *concurrent* 5–year terms.

Trygstad was released from prison in June 1984 after serving 16 months. He moved to Denver, Colorado, where he found work as "in-house" counsel for Vessels Oil and Gas Company. Eventually, Trygstad made full restitution to the South Dakota Client Security Fund for monies paid to former clients.

In October 1986 Trygstad was released from his parole, and, in early 1988 he petitioned for reinstatement to the South Dakota bar. The state disciplinary board recommended reinstatement, but the South Dakota Supreme Court denied the petition, *Matter of Trygstad*, 435 N.W.2d 723 (S.D.1989), and upon rehearing, reaffirmed its denial, *Matter of Trygstad*, 447 N.W.2d 360 (S.D.1989).

Trygstad filed a petition for reinstatement with this court on August 13, 1990. A panel of the Lawyers Board, after a hearing, recommended reinstatement, and

the Director concurred. This court scheduled a hearing on the petition in April 1991 at which time petitioner and his attorney appeared.

With respect to current moral fitness, the panel found that Trygstad's admission of the seriousness of his wrongdoing and his statements of guilt and shame were sincere and credible. The panel found that alcohol abuse had contributed to Trygstad's misconduct but that he has abstained from use of alcohol or drugs since January 30, 1983, and that he continues regularly to attend Alcoholics Anonymous meetings. The evidence supports these findings. The former attorney general of South Dakota, who prosecuted both Trygstad and Reutter, testified at both the South Dakota and the Minnesota board hearings in support of Trygstad's reinstatement, recounting that Trygstad was one of very few persons implicated in the "sting" operation who had been forthright and cooperative. The director of River Park, the chemical dependency center, testified to Trygstad's successful drug and alcohol rehabilitation; the director further described how petitioner had participated in the making of a widely televised show sponsored by River Park (now Parkside) advocating prevention and early treatment and how petitioner has been a volunteer guest lecturer at Parkside.

As to the time that has elapsed since the original discipline, more than 7½ years have gone by since the disbarment, and it has been 4½ years since petitioner was released from his parole.

As to petitioner's present competency and legal skills, he remained acquainted with legal matters during his Colorado employment at Vessel Oil and Gas, and over the past few years he has accumulated 100 hours of CLE credits. In 1990, petitioner returned with his family to Pipestone where he now does paralegal work for attorney William P. Scott. Mr. Scott was associated with petitioner during his first year or so of practice in Pipestone; he remained a friend over the years and now appears as petitioner's counsel here. If petitioner is reinstated, the plan is for him to practice with Mr. Scott. Three prominent Pipestone residents testified before the panel that they had seen a dramatic change in petitioner's character and would happily entrust legal matters to him if reinstated. In September 1990, the Pipestone City Council passed a resolution indicating a willingness to retain petitioner as an assistant city attorney if he should be reinstated.

■ The seriousness of Trygstad's criminal conduct, exacerbated by the considerable publicity it generated, cannot be overlooked. The panel refers to our case, *In re Wegner*, 417 N.W.2d at 97. In that case we reinstated an attorney disbarred for extensive drug smuggling (marijuana), who had suffered from alcoholism. On a showing of rehabilitation maintained for 7½ years after release from prison, we granted reinstatement. We think this case is like *Wegner*.

We must, however, also weigh in the balance several factors which appear adverse to reinstatement. From 1985 to 1990, Trygstad was employed as "in-house counsel" for Vessel Gas and Oil Company in Colorado. Trygstad disclosed his disbarment to his employer; he carefully refrained from holding himself out to the general public as a licensed attorney; and he always disclosed to outside counsel who dealt with his employer that he was a disbarred attorney. Nevertheless, in large part, his employment constituted the unauthorized practice of law. This is troubling. The panel noted, however, that Trygstad had disclosed his disciplinary history to Colorado authorities, and that this disclosure while inadequate was in good faith. The panel felt petitioner's restricted "in-house counsel" employment was in good faith and, when weighed against the other evidence of fitness and rehabilitation, should not preclude reinstatement.

Of concern, too, is the unresolved conflict between the Trygstad and Reutter versions of the drug distribution scheme. Trygstad, it will be recalled, testified Reutter was his supplier. Reutter, whose conviction was reversed, testified otherwise at his own tri-

al.[1] This court is not, of course, able to ascertain the truth of the matter, nor do we think it is necessary to do so. Our focus, rather, is on whether petitioner's overall record of conduct justifies the trust which clients, the court, and others must be able to have in petitioner if he were to be reinstated. *Cf. In re Brown*, 467 N.W.2d 622 (Minn.1991). Here both the South Dakota disciplinary board and the South Dakota prosecutor were aware Reutter disputed Trygstad's testimony but felt it did not preclude a recommendation of Trygstad's reinstatement. Neither, we might add, did the South Dakota Supreme Court suggest that the conflict in the Trygstad–Reutter testimony was a factor in its denial of Trygstad's application for reinstatement. Considering Trygstad's contrition for his misdeeds, his evident recovery from chemical dependency, and the genuineness of his change in moral character as found by our panel, we cannot say this testimonial conflict should bar his reinstatement.

■ The third and final adverse factor also gives us pause. Our sister state, South Dakota, has denied Trygstad's application for reinstatement. We give this action considerable deference. *Cf. In re Morin*, 469 N.W.2d 714 (Minn.1991) (great weight given to Montana disbarment). In denying reinstatement, the South Dakota Supreme Court was concerned that Trygstad did not appreciate the gravity of his misconduct as evidenced by what that court felt was a lack of candor in his various statements. *Trygstad*, 435 N.W.2d at 725. After his arrest, Trygstad gave a statement suggesting his drug involvement was primarily profit motivated; but at his South Dakota disciplinary hearing, after his successful drug and alcohol rehabilitation, Trygstad attributed his drug involvement to becoming "enamored" by or addicted to the use of cocaine. These two statements are not so much contradictory, it seems to us, as an attempt by Trygstad to come to a personal understanding of the various reasons he had for his drug involvement.

Particularly significant, we think, is that more time has now gone by since the South Dakota Supreme Court reviewed this matter. As a concurring justice of the South Dakota Supreme Court pointed out at that time, the application to that court in early 1988 was "time-wise, shortly after suspension by state authorities." *Trygstad*, 435 N.W.2d at 726 (Henderson, J., concurring). Now another year and a half has elapsed, time in which Trygstad, unsupervised, has faithfully continued his AA program and conducted himself properly. He now plans, if reinstated, to practice in this state, and consequently has applied for reinstatement here. If human beings, generally, are redeemable, and this is the premise of reinstatement, *In re Swanson*, 343 N.W.2d 662, 664 (Minn.1984), then, it seems to us, this petitioner has made the necessary showing to be allowed the opportunity to again practice law in this state.

Therefore, David J. Trygstad is hereby reinstated to the practice of law in this state upon the following terms and conditions:

1. Petitioner shall remain abstinent from the use of alcohol or any other mood-altering substance except as prescribed by a licensed physician.

2. Petitioner shall continue to participate in the Alcoholics Anonymous program and attend its weekly meetings.

3. As a condition to reinstatement, petitioner shall take and pass the professional responsibility portion of the

---

**1.** Reutter's conviction for drug dealing was affirmed by the South Dakota Supreme Court, *Reutter v. Meierhenry*, 405 N.W.2d 627 (S.D.1987), but, on writ of habeas corpus, the conviction was set aside by the 8th Circuit Court of Appeals, *Reutter v. Solem*, 888 F.2d 578 (8th Cir.1989). Reutter then pled guilty to a misdemeanor, delivery of drug paraphernalia.

At Reutter's trial, the defense was told of Trygstad's plea agreement with the state but was not told that South Dakota Commutation Board had before it for decision—indeed, on the very day the jury brought in its guilty verdict—Trygstad's application to have his consecutive 5–year sentences commuted to concurrent sentences. The Eight Circuit ruled this was prejudicial error requiring a new trial. Reutter had testified at his own trial.

bar examination and obtain the CLE credits required by the Minnesota Board of Continuing Legal Education for reinstatement, but otherwise the requirements of Rule 18e are waived.

4. Upon reinstatement petitioner shall be placed on 2 years' probation for the purpose of monitoring continuing abstinence, AA attendance, and compliance with the Rules of Professional Conduct.

It is so ordered.