In re Petition for REINSTATEMENT OF William G. MOSE, a Minnesota Attorney, Registration No. 125659.

No. A07–0437.

Supreme Court of Minnesota.

Aug. 7, 2008.

Edward F. Kautzer, St. Paul, MN, for Relator.

Cassie Breta Hanson, Kenneth R. White, Office of Lawyers Professional Responsibility, St. Paul, MN, for Respondents.

## OPINION

PER CURIAM.

William G. Mose, a lawyer admitted to the practice of law in Minnesota in 1980 and indefinitely suspended from said practice in 1991, filed a petition for reinstatement to the practice of law. The Director of the Office of Lawyers Professional Responsibility contested the petition. A pan-

el of the Lawyers Professional Responsibility Board recommended Mose not be reinstated, concluding that Mose failed to meet several of his reinstatement conditions, and that Mose did not show by clear and convincing evidence that he has undergone the requisite moral change for reinstatement or now possesses the intellectual competence necessary to be a lawyer. Mose appeals the panel's findings, conclusions, and recommendation. We conclude that Mose should not be reinstated to the practice of law because he has failed to (1) satisfy several of his reinstatement conditions; (2) prove that he has undergone the requisite moral change for reinstatement; and (3) prove that he is competent to return to the practice of law.

William G. Mose was admitted to practice law in Minnesota in 1980. He began practicing law in 1984 when he opened a solo practice that dealt mainly with family law issues. In 1989, the Director of the Office of Professional Responsibility filed a petition for disciplinary action against Mose, alleging that he had committed misconduct involving incompetence, neglect, and a failure to adequately communicate with clients in two client matters, in violation of Minn. R. Prof. Conduct 1.1, 1.3, 1.4, 3.4(c) and (d), and 8.4(d).[1] Mose and the Director entered a stipulation for discipline, which recommended a public reprimand and placing him on 2 years of supervised probation.[2] We accepted the stipulation and imposed the recommended sanctions. *In re Mose*, 443 N.W.2d 191 (Minn.1989).

In 1990, the Director petitioned to revoke Mose's probation. The Director alleged that Mose had not complied with his probation conditions and that he had committed new acts of misconduct in five client matters.[3] Based on the Director's petition, we suspended Mose indefinitely from the practice of law in Minnesota. *In re Mose*, 458 N.W.2d 100 (Minn.1990). The Director filed another petition for disciplinary action in 1991, alleging that Mose committed further misconduct in eight client matters both before and after his

---

1. The Director alleged that Mose committed misconduct in regards to one client when Mose (1) failed to notify opposing counsel that Mose's client could not attend a scheduled settlement conference and was unprepared for another settlement conference; (2) failed to provide answers to interrogatories; (3) failed to provide required evidence of his client's income and expenses at a temporary hearing, which resulted in the court assessing attorney's fees against his client based on inflated figures of the client's income; (4) promised his client that he would seek a reduction of child support and would "take care of" the attorney's fees but did nothing; and (5) knew that his client was paying less than the ordered amount of child support and did not advise his client of the consequences, which resulted in the court sentencing Mose's client to a stayed 30–day prison sentence.

In regard to the second client matter, the Director alleged that Mose committed misconduct when he (1) did not return client phone calls; and (2) failed to refund an unearned retainer.

2. Two additional complaints not included in the petition were also received by the Director and were resolved with Mose's acceptance of admonitions. These complaints involved neglect and non-communication in a bankruptcy matter and neglect and failure to properly withdraw from representation in a family law matter.

3. Mose's alleged misconduct included (1) failing to timely file briefs, motions, and responsive motions; (2) failing to answer discovery requests; (3) failing to communicate with clients and to respond to multiple client communications; (4) failing to prepare a case for trial; (5) improperly filing a joint petition for dissolution of marriage; (6) moving his law office and changing his phone number without advising clients; and (7) lying to clients about why he failed to communicate with them.

suspension.[4] Mose again entered into a stipulation with the Director. We accepted the stipulation and indefinitely suspended Mose from the practice of law in Minnesota for a minimum of 5 years. *In re Mose*, 470 N.W.2d 109 (Minn.1991). The record reflects that at the end of all the disciplinary proceedings, the Director had received 19 separate complaints against Mose.

After his suspension, Mose spent the next 16 years working at several different jobs, mostly as an official at sports games. He officiated an average of 20 to 25 hours a week, generally in the evenings or on the weekend. Mose did not hold any law-related jobs during his suspension. But in 2006, Mose began volunteering for Home Line, an advocacy organization where tenants can receive information and advice regarding their legal rights. Mose testified that he volunteered at Home Line for about 6 to 8 hours a week for the first few months and then about 3 hours a week for the next 8 months. Mose volunteered at Home Line for a little over 1 year until he stopped in 2007 to "concentrate on [his] reinstatement process."

In February 2007, Mose petitioned for reinstatement to the practice of law. The Director opposed reinstatement. After a hearing, a panel of the Lawyers Professional Responsibility Board[5] unanimously recommended that Mose not be reinstated. The panel concluded that Mose had failed to (1) satisfy some of the original conditions required for reinstatement; (2) prove by clear and convincing evidence that he had undergone the requisite moral change

for reinstatement; and (3) prove that he possessed the organizational skills, work ethic, and motivation to practice law.

 Mose ordered a transcript of the hearing, therefore, the panel's findings " 'are not binding on this court.' " *In re Selmer*, 749 N.W.2d 30, 37 (Minn.2008) (quoting *In re Peterson*, 718 N.W.2d 849, 853 (Minn.2006)); *see also* Rule 14(e), RLPR (providing that if respondent orders a transcript, the findings of fact and conclusions of law are not conclusive). Accordingly, we independently review the entire record to determine whether a petitioner should be reinstated. *In re Singer*, 735 N.W.2d 698, 703 (Minn.2007). But we will uphold the panel's factual findings if they have evidentiary support in the record and are not clearly erroneous. *Id.* We also "defer[ ] to the credibility assessments of lower courts and tribunals." *In re Kadrie*, 602 N.W.2d 868, 871 (Minn. 1999).

 A petitioner applying for reinstatement must show he has met the reinstatement conditions we imposed in our suspension order. *See Singer*, 735 N.W.2d at 703–4. The petitioner then " 'must establish by clear and convincing evidence that she or he has undergone such a moral change as now to render him a fit person to enjoy the public confidence and trust once forfeited.' " *Singer*, 735 N.W.2d at 703 (quoting *In re Jellinger*, 728 N.W.2d 917, 922 (Minn.2007)). We have said that moral change is a central focus of the reinstatement inquiry, but it is only one factor.

---

**4.** The Director alleged that Mose had (1) failed to communicate with or respond to clients; (2) neglected and been incompetent in a domestic abuse matter; (3) failed to return unearned attorney's fees; (4) failed to timely file motions and briefs; (5) failed to notify clients about his suspension; (6) accepted retainers from clients while suspended

from the practice of law; (7) failed to refund an excess attorney fee; and (8) failed to comply with Rule 26, Rules on Lawyer Professional Responsibility (RLPR), as required by our 1990 suspension order.

**5.** *See* Rules 4(e), 9, Rules on Lawyers Professional Responsibility (RLPR).

*Jellinger,* 728 N.W.2d at 922; *Kadrie,* 602 N.W.2d at 870. We also consider the following factors when determining whether reinstatement is appropriate:

(1) the petitioner's recognition of the wrongfulness of his conduct; (2) the length of time since the original misconduct and the suspension; (3) the seriousness of the original misconduct; (4) the existence of physical or mental illness or pressures that are susceptible to correction; and (5) the petitioner's intellectual competency to practice law.

*Singer,* 735 N.W.2d at 703. Each of these reinstatement factors will be considered in turn.

*Compliance with the Suspension Order*

■ In our 1991 order suspending Mose from the practice of law, we conditioned his reinstatement on, among other things:

1. complying with Rule 26, RLPR;

2. successfully completing the Minnesota bar examination;

3. satisfying CLE requirements pursuant to Rule 18(e), RLPR;

4. refunding unearned retainers to three clients;

5. fully complying with the terms of our July 18, 1989 discipline order. *Mose,* 470 N.W.2d at 110.

Our previous order required Mose to, among other things, (1) complete a course in family law and a course in professional responsibility; (2) complete a 4– or 8–day course in trial advocacy skills; (3) complete 30 CLE credits; and (4) certify to the Director that he made restitution to two clients. *Mose,* 443 N.W.2d at 192.

The panel concluded that Mose failed to (1) comply with Rule 26, RLPR; (2) comply with his CLE reporting requirement; (3) pay his lawyer registration fee; and (4) pay restitution to two clients. It is not disputed that Mose successfully completed the Minnesota bar examination and that he completed a course on family law and one on professional responsibility.

Rule 26(a), RLPR, required Mose to notify his clients of his suspension. The Director asserted, and the panel found, that Mose failed to notify his clients of his suspension and instead vacated his law office without notice. But the Director's report references clients whom Mose failed to tell about his 1990 suspension. Mose was already disciplined for his failure to notify those clients when we suspended him in 1991. *Mose,* 470 N.W.2d at 109. Nowhere in the record does it indicate that Mose violated the Rule 26 notification requirements after his 1991 suspension. Because Mose was already disciplined for his 1990 violations of Rule 26, these violations should not prevent him from reinstatement if he is able to meet the other reinstatement requirements. The same is true of the retainers Mose took from clients after his 1990 suspension—Mose was already disciplined for this misconduct in 1991, *Id.,* and did not commit any further similar misconduct after his 1991 suspension.

Nevertheless, Mose still owes restitution to two clients, and we conditioned his reinstatement on payment of that restitution. *Id.* at 110. Further, Mose testified and submitted an affidavit showing that he has earned 60.5 CLE credits, but Mose failed to report these credits to the Board of Continuing Legal Education. While we recognize that Mose's earned CLE credits, if reported, would satisfy the CLE requirements we imposed on him, we note that CLE credits must be reported before an attorney may be reinstated. Rule 18(e)(4), RLPR; Rule 9, Rules of the Minnesota State Board of Continuing Legal Education. Finally, Mose attended a 4–day trial advocacy course, which was a condition of his reinstatement. But he missed parts of 2 days of the course and

therefore did not fully complete the course as we required. Because Mose did not pay restitution to two clients, properly report his CLE credits, or complete the required trial advocacy course, we conclude that Mose failed to satisfy his reinstatement conditions.[6]

*Moral Change and Recognition of Wrongfulness of Misconduct*

 We have said that to be reinstated to the practice of law, the petitioner's moral change "must be such that if the petitioner were reinstated, 'clients could submit their most intimate and important affairs to him with complete confidence in both his competence and fidelity.'" *Kadrie,* 602 N.W.2d at 870 (quoting *In re Herman,* 293 Minn. 472, 476, 197 N.W.2d 241, 244 (1972)). The petitioner must provide "stronger proof of good character and trustworthiness than is required in an original application for admission to practice." *In re Porter,* 472 N.W.2d 654, 655–56 (Minn.1991); *see also In re Strand,* 259 Minn. 379, 380, 107 N.W.2d 518, 519 (1961). Evidence of this moral change must come from (1) an observed record of appropriate conduct, (2) the petitioner's own state of mind, and (3) the petitioner's values. *Kadrie,* 602 N.W.2d at 870 (citing *In re Swanson,* 405 N.W.2d 892, 893 (Minn. 1987)).

Following the hearing, the panel found that Mose failed to tell a witness who testified at the panel hearing about his suspension or the nature of the panel hearing. The panel found that Mose's failure to tell this witness about his suspension "signifies a willingness to engage in dis-

honest conduct in order to avoid accepting consequences or blame." Moreover, the panel found that Mose's failure to pay restitution to two clients shows a disregard for the harm he caused those clients. The panel further found that while Mose testified that he was remorseful, he "tended to minimize or ignore his dishonest acts of misconduct and offered no explanation regarding his intentional misconduct." Overall, the panel found that Mose "was not credible in his testimony that he understood the inappropriateness of" his prior misconduct and failed to demonstrate remorse for that misconduct. Based on its findings, the panel concluded that Mose had not undergone the requisite moral change to merit reinstatement.

 As a general rule we will defer to a panel's finding that a petitioner's testimony that he has undergone the requisite moral change is not credible, and we see no reason to depart from this general rule here. *Kadrie,* 602 N.W.2d at 870. Moreover, based on the record before us, we conclude that Mose failed to provide clear and convincing evidence that he has undergone the moral change necessary to reenter the practice of law.

At the panel hearing, Mose stated that he is seeking reinstatement because he wants to "rectify the mistakes [he] did in the past and [he thinks he] can do a good job." He admitted that he made several mistakes and that those mistakes involved neglect, incompetence, and a failure to communicate with clients. Mose testified that his misconduct was due to taking on

---

**6.** We note that when determining whether Mose met his reinstatement conditions, the board found that Mose's failure to pay his registration fees weighed against him. But nothing in the rules addressing reinstatement or registration fees indicate that a suspended attorney must pay attorney registration fees before petitioning for reinstatement. *See*

Rule 18, RLPR (requiring an attorney petitioning for reinstatement to pay a fee of $300 to the Director, but making no mention of registration fees); Lawyer. Reg. R. 2 (stating that active status and inactive status attorneys must pay registration fees, but not stating that suspended or disbarred attorneys must pay registration fees).

too many cases while being a solo practitioner, being inexperienced, and splitting his time between his work in the Twin Cities and his family in the Brainerd area. Mose also stated that when he undertook the representation of a new client, he would neglect the clients he already had in order to do work for the new client.

When asked about his intentional lies to clients, Mose stated that he was "very sorry" but also characterized his deceptive statements as "inaccurate statements" or "misstatements," which we conclude indicates an ongoing unwillingness to recognize the wrongfulness of his conduct. Mose also apologized, but offered no explanation for much of his intentional conduct, including why he kept client retainers when he was suspended from the practice of law.

Mose testified that he is currently more mature than when he committed his prior misconduct, and that he would now do things differently. He further stated that he would put plans in place—such as using a "tickler" computer program—to make sure he did not commit any future misconduct. But when asked about the tickler system, Mose admitted he had never used one and had no training on such systems. Moreover, Mose has not made any plans for employment if he is reinstated. We have considered whether a petitioner has a career plan in place for after reinstatement when we analyze the moral change factor. *E.g., In re Trygstad*, 472 N.W.2d 137, 139 (Minn.1991); *Strand*, 259 Minn. at 381, 107 N.W.2d at 519; *see also Jellinger*, 728 N.W.2d at 921. We conclude that Mose failed to show that he has developed plans to ensure that, unlike when he was previously admitted to practice law, " 'clients could submit their most intimate and important affairs to him with complete confidence in both his competence and fidelity.' " *Kadrie*, 602 N.W.2d at 870 (quot-

ing *Herman*, 293 Minn. at 476, 197 N.W.2d at 244).

Regarding the unpaid restitution to two clients, Mose testified that he has been unable to locate the two clients to whom he owes restitution. He stated that the money he owes them is in his attorney trust account. But Mose also admitted without explanation that he only began searching for these clients after he petitioned for reinstatement, which was approximately 16 years after his suspension. We have viewed failure to pay claims as an indication that the petitioner has not undergone a sufficient moral change. *See, e.g., In re Swanson*, 343 N.W.2d 662, 664 (Minn. 1984); *see also Kadrie*, 602 N.W.2d at 870–71.

Finally, Mose disclosed his suspension to his supervisor at Home Line. The supervisor testified that Mose discussed the suspension with him and also that Mose appeared remorseful and "disgusted with his behavior" about what he had done. A petitioner's disclosure and expression of remorse to others can weigh in favor of reinstatement. *Kadrie*, 602 N.W.2d at 871. But Mose failed to disclose his suspension to the supervisor of one of his officiating positions. While nondisclosure to this non-legal supervisor is not as worrisome as nondisclosure in a legal setting, at Mose's request, the officiating supervisor testified on Mose's behalf at the panel hearing. Despite her testifying, Mose never disclosed to the supervisor his suspension or the nature of the panel hearing. We conclude that Mose's failure to disclose his suspension to this supervisor who testified on his behalf evidences a failure to recognize the wrongfulness of his misconduct and to show remorse for that misconduct.

Based on Mose's testimony at the panel hearing, his failure to pay restitution to clients, his failure to develop sufficient

plans to avoid future misconduct, and our deference to the panel's finding that Mose was not credible in his testimony concerning his moral change, we conclude that Mose failed to show by clear and convincing evidence that he has undergone the requisite moral change to be reinstated to the practice of law.

*Length of Time Since the Original Misconduct and the Suspension.*

Mose has been suspended from the practice of law for over 16 years. This long period of time between his misconduct and his petition for reinstatement weighs in favor of reinstatement. *See Kadrie,* 602 N.W.2d at 871 (stating that "[t]he length of time since petitioner's misdeeds and suspension also weighs in favor of his reinstatement" when petitioner had been suspended 9 years earlier); *In re Wegner,* 417 N.W.2d 97, 99–100 (Minn.1987).

*Seriousness of the Original Misconduct*

We have said that "present fitness to practice law of an attorney seeking reinstatement must be considered in light of the offenses for which he or she was disbarred." *Wegner,* 417 N.W.2d at 100. But we have also said that even serious misconduct should not bar reinstatement when the petitioner has undergone the imposed discipline. *Kadrie,* 602 N.W.2d at 871.

We have in the past reinstated attorneys even after they committed serious misconduct. *E.g., Wegner,* 417 N.W.2d at 99–100 (reinstating an attorney who was convicted of a drug smuggling crime in violation of 21 U.S.C. §§ 952(a), 963 (1971)). But here, Mose's misconduct was directly related to his law practice. His failure to communicate with clients, failure to competently handle client matters, and neglect of client matters caused serious consequences for his clients, including adverse rulings and a stayed prison sentence for contempt of court. Mose also committed misconduct in many important family law matters, including child custody and domestic abuse matters. We will therefore consider the seriousness of Mose's misconduct in our reinstatement analysis and consider his present fitness to practice law in light of that misconduct.

*Existence of Physical or Mental Illness or Pressures that are Susceptible to Correction.*

Mose does not claim that any of his misconduct was caused by physical or mental illness. Therefore, this factor has no bearing on our analysis.

*Intellectual Competency to Practice Law*

We have said that "there is no fixed standard in reinstatement proceedings by which we determine a petitioner's intellectual competency to return to practice." *Kadrie,* 602 N.W.2d at 873. But when a lawyer has been suspended for a long period of time, we have suggested that "it might be advisable for an applicant to make a showing of some systematic effort to familiarize himself with current legal practice." *Strand,* 259 Minn. at 381, 107 N.W.2d at 519 (emphasizing that there is "no definite or formal standard[ ]" and "each case must be determined on the basis of a judgment as to the individual involved").

In *Jellinger,* we reinstated an attorney after a stayed disbarment subject to indefinite suspension. 728 N.W.2d at 919–20. We concluded that the attorney had current legal skills and knowledge, demonstrated by his completion of the professional responsibility exam and his CLE requirements, and also his work as a paralegal. *Id.* at 922. The attorney had been working as a paralegal for 2 years when he petitioned for reinstatement and for almost 4 years when we reinstated him. *Id.* at 920. The attorney also worked as a tax preparer while he was suspended. *Id.*

In *Kadrie,* while the panel concluded that the attorney had not demonstrated that he possessed the skills and knowledge needed for corporate practice, we concluded that the attorney had demonstrated that he was sufficiently competent to be reinstated. 602 N.W.2d at 872–73. Supporting this conclusion was the fact that the attorney had earned 130 hours of CLE credits, 53.5 of which were related to corporate practice. *Id.* Further, we concluded that the attorney's employment during his suspension "allowed him to familiarize himself with various aspects of corporate law." *Id.* at 873.

Finally, in *Trygstad,* we concluded that the attorney was sufficiently competent to practice law when he had earned over 100 CLE credits, worked as "in house" counsel for a company,[7] and was working as a paralegal at the time of his reinstatement proceedings. 472 N.W.2d at 139. The attorney also had a plan set up for him to practice with an attorney he worked with when he was a paralegal. *Id.*

Conversely, in *In re Hanson,* the attorney had not practiced law for 35 years. 454 N.W.2d 924, 926 (Minn.1990). We concluded that the attorney's eight CLE courses and his work as the personal representative for his brother's estate were not enough to "adequately demonstrate[ ] his ability to practice law after such a long hiatus." *Id.*

In this case, the panel found that based on Mose's work history, he does not have the necessary motivation or skills to practice law, nor has he evidenced an ability to prioritize his personal and professional life. Mose successfully completed the bar exam and 60.5 CLE credit hours. Mose argues that this should be sufficient to show his competency as an attorney. While it is important that Mose met the reinstatement conditions of passing the bar exam and completing the required CLE credits, given his history we conclude that more is needed to prove his competence to return to the practice of law. For example, work directly related to the law, as in *Jellinger* and *Trygstad,* or training specifically related to the practice areas in which he is interested in pursuing, as in *Kadrie,* would help to show Mose's legal competence.[8] While an attorney who has only been suspended for a short period of time may not need to show such experience to be reinstated, Mose has been away from the practice of law for 16 years. Further, he worked as an attorney for only approximately 5 years before he was first disciplined, and his professional misconduct occurred during 4 of those 5 years. Finally, much of Mose's misconduct for which he was suspended involved his ongoing lack of competence as an attorney. We therefore require that Mose provide more than his successful completion of the bar examination and CLE credits to prove he is now competent to practice law.

After his suspension, Mose did not obtain any legal employment. Mose testified that his work officiating sports games has prepared him for the rigors of a law practice. He stated that as a sports official, he has to (1) make instantaneous decisions,

---

7. In *Trygstad,* we noted that the petitioner's work as "in-house counsel" was unauthorized practice of law but that the petitioner engaged in it in good faith, he disclosed it to the State authorities, and it should not preclude rehabilitation. *Trygstad,* 472 N.W.2d at 139.

8. Mose testified that he is interested in having a legal practice dealing with social security or public interest law, such as tenant's rights. But Mose admitted that he has not taken any CLE credits specifically addressing those areas. He is therefore unlike the attorney in *Kadrie* whose CLE credits in his intended practice area weighed in favor of reinstatement.

(2) know the rules, (3) show up on time, (4) be prepared, (5) prioritize games in advance, and (6) schedule far in advance. But Mose did not provide evidence that any of his employment positions during his 16–year suspension involved any legal skills. Further, evidence showed that Mose was terminated from three different positions during his suspension for reasons such as missing work.

Mose has not worked at a full-time job since his suspension. He generally officiates 20 to 25 hours a week and does so mainly on weekends and weeknights. When he volunteered at Home Line, he only worked a few hours a week. Thus, since Mose last practiced law he has had no experience with the rigors of full-time employment—legal or otherwise.

Mose's only legal experience since his suspension is his 1–year position volunteering at Home Line for a few hours a week. As a volunteer, Mose was responsible for telephone intake. People would call with questions, Mose would take those questions to one of the three attorneys in the office, and then Mose would relay the information back to the caller. Mose's supervisor testified that Mose was competent, diligent, honest, and organized when he volunteered at Home Line, and that he would consider hiring Mose as an attorney. But the supervisor admitted that Mose's position did not involve many of the skills necessary for the practice of law. Mose's volunteer position did involve short-term case management, which the supervisor testified Mose handled well. But Mose's position did not involve any long-term case management or any legal research or writing. Considering Mose's lack of competence as an attorney before his suspension, as well as his lack of any real legal experience during his suspension, we conclude that Mose has not met his burden of show-ing that he is now competent to practice law.

Based on the foregoing analysis, we hold that Mose should not be reinstated to the practice of law because he failed to meet the following requirements:

(1) he did not satisfy all of the reinstatement conditions set out in our 1991 suspension order;

(2) he failed to prove by clear and convincing evidence that he has undergone a sufficient moral change to practice law; and

(3) he failed to show that he is intellectually competent to reenter the practice of law.

Petition denied.