**In re Petition for REINSTATEMENT OF William G. MOSE, a Minnesota Attorney, Registration No. 125659.**

No. A12–0380.

Supreme Court of Minnesota.

March 12, 2014.

572

Edward F. Kautzer, Ruvelson & Kautzer, Ltd., Saint Paul, MN; and Daniel S. Kufus, Kufus Law, LLC, Saint Paul, MN, for petitioner.

Martin A. Cole, Director, Kevin T. Slator, Senior Assistant Director, Office of Lawyers Professional Responsibility, Saint Paul, MN, for respondent.

OPINION

PER CURIAM.

Petitioner William G. Mose, who has been suspended from the practice of law since 1990, filed his second petition for reinstatement in March 2012 alleging that he had undergone the requisite moral change and was fit to practice law. The Director of the Office of Lawyers Professional Responsibility assigned the matter to a three-member panel of the Lawyers Professional Responsibility Board (LPRB). The panel conducted a hearing and later filed its findings, conclusions, and recommendation that the petition be denied. Mose ordered a transcript of the panel's hearing and the matter proceeded before this court. We adopt the panel's recommendation and deny the petition for reinstatement.

I.

Mose was admitted to the practice of law in Minnesota in 1980. He did not actually begin practicing law until 1984, when he opened a solo law practice in Edina. In 1986, he moved his law practice to the Pequot Lakes area near Brainerd, focusing primarily on family law. In 1989, Mose moved his practice back to the Twin Cities area.

In 1989, the Director filed a petition for disciplinary action against Mose for incompetence, client neglect, and failing to follow court orders. Mose stipulated that the misconduct occurred. We publicly reprimanded Mose and placed him on probation for two years. *In re Mose (Mose I)*, 443 N.W.2d 191, 192 (Minn.1989). We also ordered him to complete a trial advocacy skills course and pay restitution to two former clients. *Id.*

In 1990, the Director petitioned the court to revoke Mose's probation because Mose had not attended a trial advocacy skills course or paid restitution to his two former clients. The Director also alleged that Mose had committed new acts of misconduct, including incompetence, failing to communicate with clients, and lying to clients, involving five other client matters. Subsequently, we revoked Mose's probation and indefinitely suspended him from the practice of law in Minnesota. *In re Mose (Mose II)*, 458 N.W.2d 100, 100 (Minn.1990).

The Director filed a third petition for disciplinary action in 1991 alleging misconduct occurring before and after Mose's suspension consisting of incompetence, failure to communicate with clients, failure to account for or refund unearned retainer fees, and other misconduct involving eight more clients. Mose admitted that the misconduct had occurred. We indefinitely suspended Mose from the practice of law for a minimum of five years, effective from

the date of his 1990 suspension. *In re Mose* (*Mose III*), 470 N.W.2d 109, 109 (Minn.1991). In *Mose III*, we conditioned Mose's potential reinstatement on, among other things, his "full compliance with the terms of this court's order" in *Mose I. Id.* at 110. *Mose I*, in turn, required Mose to "certify to the Director that he has successfully completed a four day or eight day course in trial advocacy skills at the Minnesota Advocacy Institute or an equivalent trial skills program approved by the Director." *Mose I*, 443 N.W.2d at 192. As of *Mose III*, Mose's misconduct arose out of 19 complaints from 15 different clients.

In 2007, Mose filed a petition for reinstatement to the practice of law; the Director opposed the petition. A panel of the LPRB conducted an evidentiary hearing and recommended that the petition be denied. We concluded that Mose should not be reinstated to the practice of law because Mose failed to (1) satisfy several of the previous conditions of reinstatement, (2) prove that he had undergone the requisite moral change, and (3) prove that he is competent to practice law. *In re Mose* (*Mose IV*), 754 N.W.2d 357, 359 (Minn.2008).

Mose filed his second petition for reinstatement in 2012; again, the Director opposed the petition. A panel of the LPRB conducted an evidentiary hearing and recommended that the petition be denied for three principal reasons. First, the panel concluded that Mose did not comply with the reinstatement condition from *Mose III* that he complete a trial advocacy skills course. The panel rejected Mose's argument that a webcast and live lecture CLE course in litigation were reasonable substitutes to fulfill this requirement. Second, the panel concluded that Mose failed to demonstrate by clear and convincing evidence that he had undergone a moral change. The panel found Mose had not made the changes necessary to avoid the repetition of his client neglect problems in the future and demonstrated little recognition of the harm he had caused his clients. Third, the panel found Mose had not proven by clear and convincing evidence that he possesses the intellectual competence to practice law.

II.

Mose argues to this court that the panel erred in recommending that the petition for reinstatement to practice law be denied. The procedure for reinstatement is set forth in Rule 18 of the Rules on Lawyers Professional Responsibility (RLPR) and requires, among other things, that the Director investigate the petition and report his conclusions to a panel. Rule 18(b), RLPR. Thereafter, the panel may conduct a hearing and shall make its recommendation. Rule 18(c), RLPR. The panel conducted a hearing and recommended that the petition for reinstatement be denied. Because Mose ordered a transcript of the hearing, the panel's findings are not binding on this court. *Mose IV*, 754 N.W.2d 357, 360 (Minn.2008); *see also* Rule 14(e), RLPR.

The responsibility for determining whether a suspended attorney will be reinstated rests with this court. *In re Kadrie*, 602 N.W.2d 868, 870 (Minn.1999). We independently review the entire record to determine whether a suspended attorney should be reinstated. *In re Singer*, 735 N.W.2d 698, 703 (Minn.2007). In a case such as this one when a transcript has been ordered, we will defer to the panel's credibility assessments and uphold the panel's factual findings if those determinations have factual support in the record and are not clearly erroneous. *Mose IV*, 754 N.W.2d at 360.

Generally, the standard for determining whether a disbarred or suspended lawyer should be reinstated focuses on whether the attorney has demonstrated "by clear and convincing evidence that he [or she] has undergone a moral change such that clients can have complete confidence in his [or her] competence and morality." *In re Anderley,* 696 N.W.2d 380, 384–85 (Minn.2005). Other relevant factors are: (1) compliance with the terms of the suspension order; (2) the attorney's recognition of the wrongfulness of his or her misconduct; (3) the length of time since suspension; (4) the seriousness of the original misconduct; (5) the attorney's physical or mental illness or pressures that may be susceptible to correction; and (6) the attorney's intellectual competence to practice law. *See Mose IV,* 754 N.W.2d at 361.

Mose argues that the panel erred in recommending that his petition for reinstatement to practice law be denied. Specifically, Mose contends that he satisfied all of the requirements of his suspension orders. He further contends that he has proven by clear and convincing evidence that he has made the requisite moral change and possesses the intellectual competence to practice law. We will address each of these arguments in turn.

### A.

Mose contends that he has met all of the conditions for reinstatement set out in *Mose III.* The panel agreed Mose satisfied the requirement that he reimburse the two former clients, and the Director now acknowledges that Mose has satisfied this condition. The panel, however, determined that Mose failed to satisfy the requirement of *Mose III* that he take a trial advocacy skills course.

Mose argues that he satisfied this condition because a trial advocacy skills course at the Minnesota Advocacy Institute is no longer available and the courses he took were a reasonable substitute. We disagree.

In *Mose III,* we conditioned Mose's reinstatement upon his completion of a four-day or eight-day course in trial advocacy skills at the Minnesota Advocacy Institute or an equivalent trial skills program approved by the Director. *See Mose III,* 470 N.W.2d 109, 110 (Minn.1991) (conditioning Mose's reinstatement, in part, on his full compliance with the terms of *Mose I*); *Mose I,* 443 N.W.2d 191, 192 (Minn.1989) (ordering completion of the trial advocacy skills course). Subsequently, the Minnesota Advocacy Institute ceased to exist, and therefore a trial advocacy skills course was no longer available from that organization. The record supports the determination of the panel that Mose failed to satisfy the requirement of *Mose III* that he take a trial advocacy skills course. Although *Mose I* permitted Mose to substitute "an equivalent trial skills program approved by the Director," *Mose I,* 443 N.W.2d at 192, Mose did not seek the Director's approval of any alternative course. Moreover, the trial advocacy skills course approved in *Mose III* requires the course-takers to participate in different aspects of a trial and receive feedback from an instructor. The record does not establish that webcast and live lecture courses taken by Mose involve this type of active participation. Consequently, Mose failed to satisfy this reinstatement condition.

### B.

Mose next argues that he has shown the necessary moral change to return to the practice of law. Previously, we have stated that showing a moral change is the most important factor we consider in analyzing a petition for reinstatement. *In re Reutter,* 474 N.W.2d 343, 345 (Minn.

1991). To be reinstated, a lawyer must demonstrate that since committing the prior misconduct, the lawyer has undergone the requisite moral change such that clients can now submit their most important and confidential matters with complete confidence in the attorney's competence and fidelity. *In re Kadrie,* 602 N.W.2d 868, 870 (Minn.1999).

■■■■ Generally, to prove moral change a lawyer must show remorse and acceptance of responsibility for the misconduct, a change in the lawyer's conduct and state of mind that corrects the underlying misconduct that led to the suspension, and a renewed commitment to the ethical practice of law. *See Mose IV,* 754 N.W.2d 357, 362–63 (Minn.2008); *cf. In re Lieber,* 834 N.W.2d 200, 204, 206 (2013). These changes must be genuine, and not contrived or superficial. *Cf. In re Lieber,* 834 N.W.2d at 204 (concluding that the petitioner's conduct during representation of clients in arbitrations, which demonstrated his honesty, was evidence of moral change of attorney who was disbarred, in part, for dishonest conduct); *Mose IV,* 754 N.W.2d at 363 (concluding that Mose had not demonstrated evidence of moral change, in part, because he failed to show any changes he had made that would ensure he would not neglect or incompetently represent clients if he were reinstated); *In re Swanson,* 405 N.W.2d 892, 893 (Minn.1987) (denying reinstatement because the petitioner's testimony showed that he had not accepted responsibility for his misconduct). Such evidence "must come not only from an observed record of appropriate conduct, but from the petitioner's own state of mind and his values." *In re Swanson,* 405 N.W.2d at 893.

Mose argues that his volunteer work demonstrates evidence of moral change. Mose notes that his prior misconduct involved incompetent representation, lack of

diligence, and failure to communicate with clients. He contends that his successful volunteer work shows that he has the diligence and organizational skills necessary to return to the practice of law.

Mose performed volunteer work at HOME Line, Hennepin County Family Court Services (FCS), and in special education. HOME Line is a hotline that gives advice to tenants involved in disputes with their landlords. The managing attorney for HOME Line testified that Mose did satisfactory work and was well liked by staff. The panel gave little weight to this testimony because Mose only worked one day per week and the work Mose performed for HOME Line did not resolve serious questions regarding his competence and case management skills. Mose also volunteered at FCS, but Mose's supervisor was critical of his work, stating that Mose was unable to act independently and was reluctant to reach out to others when he was confused or uncertain. In 2007, Mose began a program to earn a special education teaching degree through Bemidji State University. As part of the program, Mose agreed to be a student teacher at schools in Hutchinson and Norwood Young America. But Mose left both schools after one week due to problems he had with his supervising teachers.

We conclude that Mose has not shown by clear and convincing evidence that he has made the requisite moral change for reinstatement to the practice of law. Mose has not established that he has changed either his conduct or his state of mind that resulted in his misconduct. Mose's 16–year delay in attempting to locate the two former clients to whom he owed restitution demonstrates that he does not appreciate the harm he caused them. Notably, it was not until after Mose filed the second reinstatement petition that the Director located Mose's former clients

and they were finally paid. Moreover, Mose has not yet complied with the condition of reinstatement that he complete the trial advocacy skills course. Mose's argument that he complied by taking a substitute course is not only disingenuous, it demonstrates an ongoing problem with following through on his commitments.

The recurring theme in Mose's disciplinary history is client neglect, failure to follow through on his commitments, and failure to represent his clients diligently. For example, when Mose practiced law he failed to submit required court filings, did not respond to discovery requests, and failed to adhere to judges' orders. *Mose I,* 443 N.W.2d 191, 191–92 (Minn.1989). While a volunteer at FCS, Mose failed to complete paperwork correctly, work independently, and follow supervisors' instructions. Moreover, Mose quit his student-teaching assignments after just one week even though he committed to stay at the schools for seven to eight weeks. Mose's problems at FCS and as a student teacher are reminiscent of the problems he had while practicing law.

Additionally, Mose has not demonstrated that he has a plan to avoid future misconduct. Although Mose states that he would use a tickler system to meet client deadlines, he has not reported any CLE credits in the area of law office management. At the time of the hearing, Mose also had not contacted any attorneys or law firms regarding potential employment. Mose stated that he planned to talk to his supervisor at HOME Line about a job, but had not done so. Although a suspended attorney need not have a job available to be reinstated, a petitioner should provide evidence of a deliberate plan to return to the practice of law and have systems in place to avoid future misconduct.

In sum, Mose has not presented sufficient evidence to establish a demonstrated change in the negative conduct and state of mind that led to his suspension and has not established a plan to avoid future misconduct. Accordingly, we conclude the panel's conclusion that Mose did not demonstrate he has undergone the requisite moral change to be reinstated to the practice of law is supported by the record.

### C.

■ Finally, Mose argues that he has passed the bar examination three times since his suspension, is current on his CLE credits, and has volunteered at HOME Line, all of which show he has the intellectual competence to practice law.

■ A petitioner need not work at a law firm or as a paralegal to prove he or she is competent to practice law. But an attorney who has been away from the practice of law for an extended period of time should show competence through work experience that requires legal reasoning and case management. Previously, we have concluded that work experience that requires legal reasoning and case management is one way to show competence to practice law. *See, e.g., In re Lieber,* 834 N.W.2d 200, 204 (Minn.2013) (demonstrating competence by representing clients in arbitrations during suspension); *In re Ramirez,* 719 N.W.2d 920, 922 (Minn.2006) (noting an attorney's work conducting legal research and case administration for the United States Bankruptcy Court); *In re Kadrie,* 602 N.W.2d 868, 873 (Minn.1999) (concluding that attorney who arranged contracts with vendors and assigned legal matters to counsel, which "allowed him to familiarize himself with various aspects of corporate law," demonstrated competence).

In *Mose IV,* we addressed Mose's competence to practice law as of 2008. 754 N.W.2d 357, 365 (Minn.2008). We ob-

served that Mose had passed the bar examination two times [1] since his suspension and was current on his CLE requirements, but more was needed because of his long absence from the legal profession. *Id.*

We conclude that when an attorney is suspended for incompetence and lack of diligence, and has not practiced law for an extended period of time, the attorney must not only pass the bar examination, but also demonstrate legal reasoning and case management skills through paid- or volunteer-work experience. Mose has neither worked in a law-related field nor demonstrated through his part-time volunteer work that he has the intellectual competence to practice law. Mose's volunteer work at HOME Line did not involve many of the skills necessary to practice law, such as long-term case management or legal research or writing. *Id.* at 366. Instead, Mose's primary responsibilities involved recording client intake information, reporting the information to a staff attorney, and responding to the client with possible courses of action. His work did not require complex legal reasoning, or legal research or writing. Since his suspension 23 years ago, Mose has not had any full-time employment. Instead, he has worked on average 25 hours per week officiating sporting events, a job he retired from in 2013. Given the length of time since Mose has practiced law, his lack of legal employment since his suspension, and the type of work he performed as a volunteer, the panel's conclusion that Mose lacks the competence to practice law is supported by the record.

### III.

We conclude that Mose failed to present clear and convincing evidence that he has undergone the requisite moral change to be reinstated to the practice of law. The record also supports the panel's findings that Mose failed to comply with all of the requirements of his suspension order and that he lacks the intellectual competence to be reinstated. Accordingly, we deny Mose's petition for reinstatement.

Petition denied.

---

1. This was as of 2008. As of his second petition for reinstatement, Mose had passed the bar examination three times.