PER CURIAM.
OPINION
The Director of the Office of Lawyers Professional Responsibility (Director) filed a petition for disciplinary action against respondent Adam William Klotz. The Director alleged that Klotz misappropriated client funds, commingled client and business funds, made false statements to the Director, failed to cooperate with the Director's investigation, failed to maintain trust account records, failed to diligently pursue client matters, failed to communicate with clients, made false statements to clients, and failed to safeguard and promptly refund an unearned retainer. We appointed a referee. After a hearing, the referee concluded that Klotz committed the alleged misconduct and recommended an indefinite suspension with no right to petition for reinstatement for 1 year. The *331 Director asks us to disbar Klotz, while Klotz supports the referee's recommended discipline. We conclude that in light of substantial mitigating factors, the appropriate discipline for Klotz's misconduct is an indefinite suspension with no right to petition for reinstatement for 18 months.
FACTS
Respondent Klotz was first licensed to practice law in Minnesota in September 2010. During the time of his misconduct, he maintained a general civil practice, worked as a part-time public defender under a contract with Brown County, and handled child protection cases on a per-hour basis for the County. Klotz has no prior disciplinary history. The misconduct at issue here involves six clients, failure to cooperate with the Director, and trust account deficiencies.
P.C. Matter and Failure to Cooperate
Klotz represented P.C. in three separate collection actions a creditor brought against P.C. In 2013, Klotz negotiated a settlement agreement that resolved all three cases for a total payment of $11,000, to be paid in monthly installments of $500. Klotz and P.C. agreed that P.C. would make electronic payments directly to Klotz each month and that Klotz would make a $500 payment from his trust account each month to the creditor. Because Klotz believed that he could not have funds electronically deposited into his trust account, he gave P.C. the information necessary to electronically deposit his monthly payments into Klotz's business account. Before each monthly payment was due to the creditor, Klotz was to transfer $500 from his business account to his trust account.
On February 2, 2015, Klotz overdrew his trust account. His bank reported the overdraft to the Director, and the Director contacted Klotz, requesting trust account books and records related to the overdraft.
After receiving the Director's overdraft notice, but before responding to the Director, Klotz reviewed his account statements. He determined that not only had P.C. been making consistent, timely payments, but that P.C. had actually paid Klotz $5,600 more than he was obligated to pay to his creditor.[1] Klotz refunded $5,600 to P.C. around March 5, 2015.
In his response to the Director, Klotz produced the requested books and records and told the Director about the payment arrangement he had with P.C., including the deposits into his business account. Klotz claimed the overdraft occurred because P.C. made erratic and undocumented deposits into Klotz's business account, making it difficult for him to make timely transfers to his trust account.
On May 19, 2015, the Director notified Klotz that she was opening an investigation into his trust account practices and requested all business account records related to P.C.'s settlement. Klotz did not timely respond but instead requested and received several extensions. He finally produced some, but not all, of the requested documents at the end of June 2015. In his response, he also included a chart that purported to show that all payments he received from P.C. were timely deposited into his trust account. This chart was false and misleading because Klotz had not timely deposited P.C.'s funds into his trust account.
In July 2015, Klotz produced more of the documents the Director had requested, but he still failed to fully comply. In January *332 2016, Klotz finally produced most of the account records the Director requested, but he heavily redacted the records to conceal how much of P.C.'s money actually had been deposited in Klotz's business account. The Director continued to request the remaining records in unredacted form and ultimately acquired the records from Klotz's bank. Klotz eventually produced all requested records in unredacted form after he retained counsel.
After reviewing Klotz's records, the Director determined that P.C. often deposited more than $500 into Klotz's business account in a given month. Because Klotz was not tracking how much money P.C. deposited into his business account, Klotz did not transfer all of P.C.'s funds into his trust account every month. As a result, Klotz's business account became a repository for P.C.'s funds, and the amount of P.C.'s funds in the account grew nearly every month.
Klotz paid personal and business expenses out of his business account. At times, the balance of his business account was insufficient to account for all of P.C.'s funds that should have been in the account. The referee specifically found that Klotz used up to $5,340.97 of P.C.'s funds to pay his personal and business expenses.
The referee concluded that Klotz's conduct regarding P.C. violated Minn. R. Prof. Conduct. 1.15(a)[2] , 8.1(a) 3 and (b)[4] , 8.4(c) 5 and (d)[6] , and Rule 25, Rules on Lawyers Professional Responsibility (RLPR).[7]
Trust Account Deficiencies
The referee found that, between May 2013 and March 2015, Klotz failed to maintain the required books and records for his trust account. During some of this time period, Klotz's trust account did not contain sufficient funds to cover aggregate client balances, and Klotz overdrew the account on three occasions.[8] Klotz caused these shortages and overdrafts by making a monthly payment to P.C.'s creditor before he had deposited sufficient funds into his trust account to cover the transfer.
The referee found that Klotz's proffered justification for the overdraft-P.C.'s erratic deposits-was false. The referee found that "[a]t all times, ... total funds transferred by P.C.... were sufficient to cover the $500 monthly settlement payments" to the creditor and that it was Klotz's misappropriation of P.C.'s funds *333 that caused the overdraft." The referee concluded that Klotz's management of his trust account violated Minn. R. Prof. Conduct. 1.15(a) and (h), as interpreted by Appendix 1.[9]
Loans to Clients
Klotz negotiated settlements with creditors on behalf of two clients. In each case, Klotz issued a check drawn on his trust account and payable to his client's creditor. But when the checks were issued, Klotz's trust account contained funds for neither client. Instead, Klotz deposited his own funds into his trust account to cover the settlement amounts. The referee found that each of these transactions was a loan to a client and that these loans violated Minn. R. Prof. Conduct 1.8(e).[10]
A.H. Matter
In September 2013, A.H. retained Klotz to represent him in an employment matter and executed a flat-fee retainer agreement. In January 2014, A.H. paid the portion of the fee due and met with Klotz to discuss the case. They agreed that Klotz would draft and serve a complaint on A.H.'s behalf within about 3 weeks. For nearly 3 months after the planned date of service, A.H. made numerous attempts to contact Klotz but never heard from him.
On March 12, 2014, Klotz sent A.H. an e-mail apologizing for the delay. Klotz said that he was still working on the complaint and would complete it as soon as he could. On April 1, 2014, A.H. again asked for an update. Klotz responded that he was still working on the complaint. For the next month, A.H. tried to contact Klotz four times. After A.H.'s fourth attempt, Klotz told A.H. that he was free to retain other counsel if he was dissatisfied. After this exchange, A.H. twice asked for an estimated time of completion. On May 13, 2014, Klotz told A.H. that the complaint would be served on May 19 and a copy would be mailed to him. On June 19, 2014, Klotz finally served a complaint in the A.H. matter.
After serving the complaint, Klotz did not keep A.H. informed about the status of an answer in the case. In mid-August, A.H. asked Klotz about the status of the case, received no response, and filed an ethics complaint with the Director. It was only after receiving word of the complaint that Klotz gave A.H. a copy of the complaint and answer. Klotz also informed A.H. that a scheduling conference was set. Klotz did not timely communicate the results of the conference, even after A.H. specifically asked him 2 months after the conference occurred.
The referee concluded that Klotz's conduct regarding A.H. violated Minn. R. Prof. Conduct 1.3,[11] 1.4(a)(3) 12 and (4),[13] *334 4.1,[14] and 8.4(c).
D.M. Matter
On June 17, 2013, D.M. retained Klotz to represent her in an employment matter, and Klotz agreed to draft a complaint for her. In September 2013, D.M. asked about the status of her case and followed up with several e-mails and voice messages. Klotz finally responded in April 2014, telling D.M. that he had not forgotten about her and was working on her case. After receiving that message, D.M. received no other communication from Klotz until after another inquiry in mid-May 2014. In response, Klotz said that the complaint would be served within the week, and he would contact her shortly to discuss it.
Klotz, however, did not serve the complaint and did not respond to D.M. until another attorney representing D.M. in an unrelated matter contacted Klotz on her behalf. While talking to the attorney, Klotz claimed to have mailed the complaint already, and said he would "be in touch" to discuss the complaint with D.M. D.M. had no further contact from Klotz despite repeated overtures from her and her other attorney. D.M. then terminated Klotz's representation.
In his answer to the Director's petition, Klotz maintained that he mailed the complaint to D.M. At the referee hearing, however, Klotz admitted that it was possible he did not mail the complaint. The referee found that Klotz did not mail the complaint. The referee concluded that Klotz's conduct regarding D.M. violated Minn. R. Prof. Conduct 1.3, 1.4(a)(3) and (4), 4.1, and 8.4(c).
M.C. Matter
M.C. met with Klotz in August of 2012 about a family law matter. Klotz prepared a retainer agreement, signed it, and e-mailed a copy to M.C. Later that month, M.C. gave Klotz a check for $200 as a partial payment of the advance fee the two had discussed. Klotz placed the check in his desk and did not deposit it until August 2013. M.C. put the matter on hold in October 2012 without signing the retainer agreement. When M.C. wanted to revive the matter in July 2014, M.C. discovered that he could not open the retainer agreement file on his computer and tried to contact Klotz many times over a 3-month period. Klotz never responded substantively to M.C.'s concerns, and M.C. terminated his attorney-client relationship with Klotz in October 2014. On October 21, 2014, Klotz said he would immediately return the $200 that M.C. had paid. Klotz, however, did not return the money until November 21, 2014, when he learned that M.C. had filed an ethics complaint against him. The referee concluded that Klotz's conduct regarding M.C. violated Minn. R. Prof. Conduct 1.4(a)(4) ; 1.15(a), (c)(4), 15 and (5);[16] and 1.16(d).[17]
The referee we appointed conducted a hearing on the misconduct described above. The referee issued findings of fact, conclusions of law, and a recommendation *335 for discipline. The referee concluded that the Director had proven the misconduct alleged in the petition. The referee found that the extent of Klotz's deception and dishonesty was an aggravating factor. The referee also found that Klotz's remorse, the stress he was under at the time of the misconduct, his inexperience in the practice of law, and his lack of prior discipline were mitigating factors. The referee, however, did not "heavily weigh[ ]" any of the mitigating factors. The referee recommended that Klotz be indefinitely suspended for a minimum of 1 year, and if reinstated, be subject to a probationary period of at least 2 years.
ANALYSIS
The Director and Klotz do not dispute the referee's findings and conclusions that Klotz committed the misconduct described above. Instead, they dispute the appropriate discipline. The Director contends that we should disbar Klotz, while Klotz urges us to adopt the referee's recommended discipline. As part of their dispute over the appropriate discipline, the parties separately challenge certain of the referee's findings regarding aggravating and mitigating factors. We consider the disputed findings and conclusions on aggravating and mitigating factors as part of our analysis on the appropriate discipline for Klotz's misconduct.
I.
The purpose of attorney discipline is " 'not to punish the attorney but rather to protect the public, to protect the judicial system, and to deter future misconduct by the disciplined attorney as well as by other attorneys.' " In re Pitera , 827 N.W.2d 207, 210 (Minn. 2013) (quoting In re Rebeau , 787 N.W.2d 168, 173 (Minn. 2010) ). We give "great weight" to the referee's recommended discipline, but "we retain ultimate responsibility for determining the appropriate sanction." Rebeau , 787 N.W.2d at 173. We consider four factors in determining the appropriate discipline to impose " '(1) the nature of the misconduct; (2) the cumulative weight of the disciplinary violations; (3) the harm to the public; and (4) the harm to the legal profession.' " In re Hansen , 868 N.W.2d 55, 59 (Minn. 2015) (quoting In re Nelson , 733 N.W.2d 458, 463 (Minn. 2007) ). We also consider both aggravating and mitigating factors, and look to similar cases when determining the appropriate sanction. In re Tigue , 900 N.W.2d 424, 431 (Minn. 2017).
As previously noted, the parties challenge the referee's findings and conclusions that certain aggravating and mitigating factors are present. Because the Director ordered a transcript of the disciplinary hearing, the referee's findings of fact and conclusions regarding the existence of aggravating and mitigating factors are not conclusive. See Tigue , 900 N.W.2d at 428-29 ; see also RLPR 14(e). On review, we give great deference to the referee's findings and will uphold those findings if supported by the record and not clearly erroneous. In re Voss , 830 N.W.2d 867, 874 (Minn. 2013). A finding is clearly erroneous when we are " 'left with the definite and firm conviction that a mistake has been made.' " In re Wentzell , 656 N.W.2d 402, 405 (Minn. 2003) (quoting In re Strid , 551 N.W.2d 212, 215 (Minn. 1996) ).
A.
Klotz's misconduct includes lying to the Director, not cooperating with the Director's investigation, creating a false and misleading document, misappropriating client funds, and neglecting and lying to clients. Making false statements to clients and the Director constitutes serious misconduct. See *336 In re Montez , 812 N.W.2d 58, 68 (Minn. 2012). As an officer of the court, "[h]onesty and integrity are chief among the virtues the public has a right to expect of lawyers." In re Ruffenach , 486 N.W.2d 387, 391 (Minn. 1992).
Klotz's pattern of making false and deceptive statements spanned more than a year. He repeatedly lied to his clients when he claimed to be nearly done with work for them or that he had sent documents to them. He also lied to the Director in response to her initial inquiries about his trust account. Finally, Klotz produced a false and misleading chart and redacted his bank statements in a misleading manner to attempt to hide his misappropriation of P.C.'s funds.
Klotz's failure to cooperate with the Director's investigation is also serious misconduct. Hansen , 868 N.W.2d at 59. Failure to cooperate generally warrants suspension, especially where the noncooperation is substantial and prolonged. See In re Schulte , 869 N.W.2d 674, 678 (Minn. 2015). Klotz failed to timely comply with requests for documents from the Director. He asked for several extensions and still did not timely respond. After repeated failures to timely respond, the Director had to subpoena records from Klotz's bank.
Client neglect is also considered serious misconduct and may warrant suspension. Voss , 830 N.W.2d at 877 ; In re O'Brien , 809 N.W.2d 463, 467 (Minn. 2012). If the pattern of neglect or misconduct continues long enough, suspension or even disbarment is proper. In re Taplin , 837 N.W.2d 306, 312 (Minn. 2013). When client neglect results in harm to the client, we have imposed an indefinite suspension. See In re Fru , 829 N.W.2d 379, 388-90 (Minn. 2013) ; see also In re Lindley , 538 N.W.2d 697, 698 (Minn. 1995). Here, Klotz delayed his clients' cases and caused them frustration by failing to communicate with them and not working diligently on their matters for extended periods of time. He also failed to timely return an unearned retainer. His clients' interests were not otherwise harmed.
We consider misappropriation to be particularly serious misconduct. Tigue , 900 N.W.2d at 431. An examination of our cases, however, shows that we treat misappropriation differently depending upon whether the conduct is considered intentional misappropriation or negligent misappropriation. We have traditionally disbarred attorneys who intentionally misappropriate client funds unless there are substantial mitigating circumstances. See, e.g. , In re LaChapelle , 491 N.W.2d 17, 19-20 (Minn. 1992). In contrast, negligent misappropriation often results in a short suspension or lesser discipline. See, e.g. , In re Tigue , 843 N.W.2d 583, 585, 589 (Minn. 2014) (suspending an attorney for 30 days for negligent misappropriation); In re Fogel , 812 N.W.2d 81, 82 (Minn. 2012) (publicly reprimanding an attorney for negligent misappropriation).
Intentional " '[m]isappropriation occurs whenever funds belonging to a client are not deposited in a trust account and are used for any purpose other than that specified by the client.' "[18] In re Fairbairn , 802 N.W.2d 734, 742-43 (Minn. 2011). Attorneys are "charged with the knowledge that [they] must maintain client funds in a separate trust account and that those funds are not for [their] personal use." In re Copeland , 505 N.W.2d 606, 608 (Minn. 1993). We have found intentional misappropriation when an attorney uses *337 client funds for his or her own personal benefit, even when the attorney did not intend to permanently deprive a client of his or her funds. See In re Eskola , 891 N.W.2d 294, 299 (Minn. 2017) (stating that an attorney "misappropriated client funds by depositing these funds into his business account and then using those funds for purposes other than those specified by the client" and that even though the attorney "did not intend to permanently deprive his clients of their funds," this was misappropriation); Fairbairn , 802 N.W.2d at 743 ("Borrowing from client funds, no matter how temporary or no matter how seemingly safe, is misappropriation and is not to be countenanced" (citation omitted) (internal quotation marks omitted) ). In some circumstances, we have characterized misappropriation as negligent. Negligent misappropriation occurs when an attorney places a client's funds into a trust account but later removes those funds from the trust account to pay an obligation incurred on behalf of another client because of the attorney's failure to maintain proper trust account books and records. See Tigue , 900 N.W.2d at 429.
The record in this case supports the conclusion that Klotz engaged in the intentional misappropriation of a maximum of $5,340.97 of P.C.'s funds. It is undisputed that Klotz never placed these funds in his trust account. Instead, Klotz made the decision to place client funds in his business account through his arrangement with P.C. And Klotz then spent P.C.'s funds that he kept in his business account for his own benefit.[19]
B.
We next examine the cumulative effect of Klotz's misconduct to determine the appropriate discipline to impose. Multiple instances of misconduct " 'may compel severe discipline even when a single act standing alone would not have warranted such discipline.' " Montez , 812 N.W.2d at 69 (quoting In re Oberhauser , 679 N.W.2d 153, 160 (Minn. 2004) ). We distinguish between " 'a brief lapse in judgment or a single, isolated incident' from 'multiple instances of mis[conduct] occurring over a substantial amount of time.' " In re Stoneburner , 882 N.W.2d 200, 206 (Minn. 2016) (alteration in original) (quoting In re Severson , 860 N.W.2d 658, 673 (Minn. 2015) ). Over the course of more than 2 years, Klotz violated 15 different rules of professional conduct, and he violated many of these rules multiple times. Taken together, Klotz's acts are not isolated, but are a wide-ranging pattern of continuing behavior.
C.
The final two factors require us to determine if Klotz's misconduct harmed members of the public or the legal profession. We consider the number of clients harmed and the extent of their injuries. In re Coleman , 793 N.W.2d 296, 308 (Minn. 2011). Here, three clients were harmed because Klotz did not diligently pursue their cases and he lied to them, but no clients' claims were lost or became time barred because of Klotz's inaction. In addition, no client was permanently deprived of any money. Klotz's pattern of making false statements harmed the profession by undermining the public's faith in the legal profession. In re Samborski , 644 N.W.2d 402, 408 (Minn. 2002). And Klotz's misappropriation of client funds harmed the *338 public and the profession because it eroded the public's trust in lawyers and reflects poorly on the profession. Eskola , 891 N.W.2d at 300. Accordingly, Klotz's conduct harmed the public and the profession.
D.
After considering the four factors described above, we then "consider and weigh any aggravating or mitigating factors to determine the appropriate sanction." In re Ulanowski , 834 N.W.2d 697, 703 (Minn. 2013) ; see also In re Jaeger , 834 N.W.2d 705, 711 (Minn. 2013) ; Fairbairn , 802 N.W.2d at 742. The referee found only one aggravating factor: the extent of Klotz's deception and dishonesty in the investigation. The referee expressly found four mitigating factors, but gave none of them "heav[y] weight[ ]": (1) recognition and remorse for his misconduct; (2) the stress Klotz was under at the time of the misconduct; (3) his inexperience in legal practice; and (4) the lack of any prior discipline.
The parties dispute certain of the referee's findings and conclusions on aggravating and mitigating factors. Klotz challenges the referee's finding that his deception and dishonesty in the investigation of his trust account constitutes both an aggravating factor and misconduct. The Director disputes the referee's findings that stress in Klotz's life exacerbated the mismanagement of his practice and mitigates his misconduct, and that Klotz's lack of experience and prior discipline are mitigating factors. We consider first the factors the parties dispute and then consider additional factors the referee found.
1.
Klotz argues, and the Director concedes, that the referee erred by concluding that the extent of Klotz's dishonesty and deception constituted both an aggravating factor and independent misconduct. We have clarified that "although 'multiple acts or a pattern of misconduct may properly influence the cumulative weight analysis,' which is a factor we consider when determining appropriate discipline, 'they cannot also serve as an additional aggravating factor.' " In re Bonner , 896 N.W.2d 98, 110 (Minn. 2017) (quoting Eskola , 891 N.W.2d at 301 ). Similarly, although the multiple times that Klotz engaged in deceptive conduct is relevant to our consideration of the cumulative weight of misconduct, it is not a separate aggravating factor. Accordingly, the referee clearly erred by finding that the extensive nature of Klotz's deception and dishonesty in the investigation was both misconduct and an aggravating factor.
2.
Turning to mitigating factors, the Director disputes the referee's finding that the multiple stressors in Klotz's life are a mitigating factor. We have recognized that extreme or extraordinary stress can be a mitigating factor. See Fairbairn , 802 N.W.2d at 745 ; see also In re Rooney , 709 N.W.2d 263, 272 (Minn. 2006) ("Turmoil in an attorney's personal life has been considered a mitigating factor even without proof that the turmoil caused the misconduct.").
The Director argues that the type of stress the referee found is not sufficiently extreme or extraordinary to mitigate misconduct. But we have never examined whether particular stressors in an attorney's life were objectively so extreme or extraordinary as to warrant mitigation. In prior cases, we have examined the particular facts and circumstances facing each attorney and whether the record showed that those stressors constituted extraordinary stress for that attorney. To create the legal threshold the Director requests *339 would impose an objective standard onto what is an inherently subjective matter. Accordingly, we decline the Director's invitation to set a legal threshold for the types of stress eligible for mitigation. We instead look to the record for factual support of any claims of mitigation due to extreme stress.
Here, the record establishes that, after his child was born, the stress that Klotz experienced increased by a significant amount. The referee found that Klotz suffered stress related to his son's sleep problems, suffered substantial sleep deprivation, and experienced stress related to caring for his son while his wife worked long hours. The referee found that the stress Klotz experienced was "among the causes of his inability to manage his own practice and the ethical violations that resulted," and "compound[ed] and exacerbate[d] respondent's mismanagement of his practice." Because evidence in the record supports this finding, the referee's conclusion that extreme stress was a mitigating factor was not clear error.
3.
The Director argues that the referee erred by finding that Klotz's lack of prior discipline is a mitigating factor. We have held that the absence of prior discipline is not a mitigating factor. In re Torgerson , 870 N.W.2d 602, 614 (Minn. 2015) (concluding that the referee should not have relied on lack of disciplinary history as a mitigating factor); Rebeau , 787 N.W.2d at 176 (same). Therefore, the referee clearly erred by considering this fact to be a mitigating factor.
4.
The Director also argues that the referee erred by finding that Klotz's inexperience in legal practice is a mitigating factor. We have recognized that limited years in practice can mitigate misconduct that is related to an attorney's inexperience. See, e.g., In re Getty , 401 N.W.2d 668, 671 (Minn. 1987) (noting inexperience mitigated unprofessional courtroom conduct). But "inexperience does not mitigate acts of dishonesty." In re Michael , 836 N.W.2d 753, 767 (Minn. 2013) ; see also In re Ward , 563 N.W.2d 70, 72 (Minn. 1997) ("[W]e believe youth and inexperience do not mitigate acts of dishonesty").
Because inexperience in practice does not mitigate acts of dishonesty, the referee clearly erred by finding that inexperience mitigated Klotz's acts of dishonesty. The referee did not, however, err by finding that inexperience mitigated Klotz's failure to safeguard client funds and trust account record violations. This finding is supported by the record, and the referee expressly noted that Klotz's rule violations related to file management and his trust account stemmed from his ignorance, failure to learn, and gross negligence. Accordingly, the referee did not clearly err by concluding that Klotz's inexperience mitigated some of his misconduct.
5.
The referee also repeatedly emphasized that Klotz's "misappropriation and commingling of client funds was not [so much] a result of selfish or dishonest motive as of gross negligence and incompetence."[20] We have recognized that a lack *340 of selfish motive or intent to permanently deprive clients of their funds can serve as a mitigating factor. See Eskola , 891 N.W.2d at 301 (concluding that misappropriation of client funds co-mingled in attorney's business account was mitigated, in part, by a lack of intent to steal); Fairbairn , 802 N.W.2d at 747 (recognizing lack of selfish motive can mitigate misappropriation); Rooney , 709 N.W.2d at 272 (recognizing that the attorney intended to temporarily borrow client funds, rather than defraud clients, during discussion of mitigating factors). In this case, the referee credited Klotz's testimony that while some of P.C.'s funds paid Klotz's personal expenses, he had no selfish motive in doing so. The referee also found that Klotz returned P.C.'s overpayment when he became aware of it. Accordingly, the record supports the referee's conclusion that Klotz's lack of selfish motivation is a mitigating factor in this case.
6.
Finally, in terms of mitigation, we have recognized that whether an attorney is remorseful "is an important issue in an attorney discipline case." Fairbairn , 802 N.W.2d at 743. The referee in this case found that Klotz felt genuine remorse for his misconduct. This finding is, however, tempered by Klotz's long deception and attempt to hide the full scope of his misconduct from the Director. Klotz calculated what he owed P.C. and paid him only after he was aware of the Director's overdraft inquiry. The referee also noted that Klotz's "remorse came only after the Director had pierced through respondent's misrepresentations and other dishonesty." Therefore, even though Klotz's remorse is sincere, the timing of it leads us to give this mitigating factor little weight.
E.
After considering aggravating and mitigating factors, we look to similar cases to ensure consistency in attorney discipline cases. Tigue , 900 N.W.2d at 433. Each case stands on its own facts, but Klotz's case is most similar to In re Eskola , 891 N.W.2d 294 (Minn. 2017). There, we suspended an attorney for 18 months and permanently prohibited the attorney from being a trust account signatory. Id. at 295-96. Eskola intentionally misappropriated more than $18,000 in client funds by depositing the money into his business account and using it for personal expenses. Id. at 297-98. He also disbursed unearned fees to himself, made false statements to the Director to conceal his wrongdoing, failed to safeguard client property, and failed to maintain trust account books and records. Id. at 299. Eskola, like Klotz, repaid all the misappropriated funds, so no clients were financially harmed. Id. at 301. Both were also remorseful for their actions, and neither was motivated by a desire to permanently deprive clients of their funds. Id. Overall, this case appears closest to Klotz's case.
As the Director notes, intentional misappropriation of client funds usually warrants disbarment in the absence of substantial mitigating factors. Tigue , 900 N.W.2d at 431 ; LaChapelle , 491 N.W.2d at 21. The record here contains sufficient evidence of substantial mitigating factors. Most importantly, the referee found that Klotz's misconduct was not motivated by self-interest. In other words, he did not take P.C.'s funds for his own benefit, and he did not intend to permanently deprive *341 P.C. of his money. The absence of a selfish motive, together with the other mitigating factors the referee found, and the lack of financial harm to clients, convince us that disbarment is not the appropriate discipline for Klotz's misconduct.
But because of the long duration and severity of Klotz's misconduct, the referee's recommended suspension would be insufficient to protect the public and the judicial system. Instead, after considering the nature and extent of Klotz's misconduct, the harm to the public and the profession, the presence of mitigating factors, and similar cases, we hold that the appropriate discipline is an indefinite suspension with no right to petition for reinstatement for 18 months.
Accordingly, we order that:
1. Respondent Adam William Klotz is indefinitely suspended from the practice of law, effective 14 days from the date of this opinion, with no right to petition for reinstatement for 18 months.
2. Klotz may petition for reinstatement under Rule 18(a)-(d), RLPR. Reinstatement is conditioned on successful completion of the written examination required for admission to the practice of law by the State Board of Law Examiners on the subject of professional responsibility and satisfaction of continuing legal education requirements. See Rule 18(e)-(f), RLPR.
3. If Klotz is reinstated, he shall be subject to supervised probation for at least a period of two years under such terms as the court may impose.
4. Klotz shall comply with Rule 26, RLPR (requiring notice of suspension to clients, opposing counsel, and tribunals), and shall pay $900 in costs, see Rule 24(a), RLPR.

The Director calculated only a $5,100 overpayment, but Klotz has not sought the $500 difference from P.C.

"All funds of clients or third persons held by a lawyer or law firm in connection with a representation shall be deposited in one or more identifiable trust accounts...." Minn. R. Prof. Conduct 1.15(a).

"[A] lawyer ... in connection with a disciplinary matter[ ] shall not ... fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority...." Minn. R. Prof. Conduct 8.1(b).

"It is professional misconduct for a lawyer to ... engage in conduct that is prejudicial to the administration of justice." Minn. R. Prof. Conduct 8.4(d).

Rule 25, RLPR, provides, in part, that a lawyer subject to an investigation has the duty to cooperate with the Director by complying with reasonable requests to "[f]urnish designated papers, documents, or tangible objects" and to "[f]urnish in writing a full and complete explanation covering the matter under consideration."

Klotz's bank notified the Director of the last of these overdrafts.

"Every lawyer engaged in private practice of law shall maintain or cause to be maintained on a current basis, books and records sufficient to demonstrate income derived from, and expenses related to, the lawyer's private practice of law, and to establish compliance with paragraphs (a) through (f)." Minn. R. Prof. Conduct 1.15(h). Appendix 1 to the Minnesota Rules of Professional Conduct contains a more detailed explanation of the books and records attorneys must maintain to comply with Rule 1.15(h).

"A lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation." Minn. R. Prof. Conduct 1.8(e).

"A lawyer shall act with reasonable diligence and promptness in representing a client." Minn. R. Prof. Conduct 1.3.

"A lawyer shall ... promptly comply with reasonable requests for information." Minn. R. Prof. Conduct 1.4(a)(4).

"In the course of representing a client a lawyer shall not knowingly make a false statement of fact or law." Minn. R. Prof. Conduct 4.1.

"A lawyer shall ... deposit all fees received in advance of the legal services being performed into a trust account and withdraw the fees as earned." Minn. R. Prof. Conduct 1.15(c)(5).

"Upon termination of a representation, a lawyer shall ... refund[ ] any advance payment of fees or expenses that has not been earned or incurred." Minn. R. Prof. Conduct 1.16(d).

Intentional misappropriation also occurs when an attorney receives a retainer from a client, performs no work for the client, and does not return the funds to the client. See Taplin , 837 N.W.2d at 310-11. Klotz returned M.C.'s retainer, and the Director does not argue that Klotz committed misappropriation regarding M.C.

The referee's findings that Klotz's misappropriation was not driven by avarice but by incompetence and a grossly negligent failure to maintain any records for either his business or trust account do not change the nature of his misconduct, but, as discussed below, these findings mitigate Klotz's misconduct.

The referee made a factual finding that Klotz's "misappropriation and commingling of client funds was not [so much] a result of selfish or dishonest motive as of gross negligence and incompetence." The referee did not expressly recognize the absence of a selfish motive as a mitigating factor. It is clear from the referee's memorandum that Klotz's lack of a selfish motive factored heavily in the referee's recommendation of the appropriate discipline. As a result, we consider whether the referee clearly erred in finding this mitigating factor.