STATE OF MINNESOTA

IN SUPREME COURT

A22-0523

Original Jurisdiction

Per Curiam
Dissenting, Anderson, Thissen, JJ.
Took no part, Procaccini, J.


In re Petition for Reinstatement of
Adam W. Klotz, a Minnesota Attorney,
Registration No. 0390925.

Filed: October 4, 2023
Office of Appellate Courts

_____

Nicholas M. Ryan, Eric T. Cooperstein, Law Office of Eric T. Cooperstein, PLLC, Minneapolis, Minnesota, for petitioner.

Susan M. Humiston, Director, Joshua H. Brand, Senior Assistant Director, Office of Lawyers Professional Responsibility, Saint Paul, Minnesota, for respondent.

_____


S Y L L A B U S

Based on our independent review of the record, the panel's conclusion that petitioner has not undergone the requisite moral change was not clearly erroneous.

Petition denied.

1

# OPINION

PER CURIAM.

Adam W. Klotz filed a petition for reinstatement following his indefinite suspension from the practice of law. After a hearing, a panel of the Lawyers Professional Responsibility Board recommended against Klotz's reinstatement. The panel concluded that Klotz failed to demonstrate by clear and convincing evidence that he had undergone the requisite moral change for reinstatement. Klotz contests the panel's findings, conclusions, and recommendation, and asserts that he should be reinstated. The Director of the Office of Lawyers Professional Responsibility (Director) agrees with the panel's recommendation.

After independently reviewing the record, we conclude that Klotz should not be reinstated to the practice of law because he failed to prove by clear and convincing evidence that he underwent the requisite moral change required for reinstatement.

## FACTS

Klotz was admitted to practice law in Minnesota in 2010. In 2018, we indefinitely suspended Klotz with no right to petition for reinstatement for a minimum of 18 months for misappropriating client funds; making false statements to the Director and attempting to conceal from the Director the full scope of his misconduct; creating a false and misleading document; failing to maintain required trust account records; failing to safeguard and promptly refund an unearned retainer; making false statements to clients; neglecting client matters; and failing to communicate with clients. *In re Klotz*, 909 N.W.2d 327, 330–31, 335 (Minn. 2018). We concluded that Klotz violated many rules of

professional conduct by his misconduct. *Id.* at 337. We explained that several stressors in Klotz's life, his inexperience in the practice of law and a lack of a selfish motive, were mitigating factors. *Id.* at 338–40. Because of the "long duration and severity of Klotz's misconduct," we held that the referee's recommended suspension (minimum of 1 year) would be insufficient and instead imposed an indefinite suspension with no right to petition for reinstatement for 18 months. *Id.* at 341.

Klotz filed a petition for reinstatement in February 2020. The Director investigated and provided Klotz with a draft report summarizing the investigation. After receiving the Director's report, Klotz withdrew his petition on September 30, 2021.

About 7 months later, in April 2022, Klotz filed his current reinstatement petition. The panel conducted a 2-day hearing. Klotz testified on his own behalf and called four witnesses. At the conclusion of the hearing, the Director announced her opposition to Klotz's reinstatement.

In December 2022, the panel issued its findings, conclusions, and recommendation. The panel concluded that Klotz failed to prove by clear and convincing evidence moral change and that the public would be at risk if Klotz were to be readmitted to the practice of law, and as a result, it recommended not reinstating Klotz. Klotz ordered a hearing transcript, and he asks us to reinstate him to the practice of law in Minnesota.

## ANALYSIS

We are responsible for determining whether an attorney will be reinstated. *In re Kadrie*, 602 N.W.2d 868, 870 (Minn. 1999). When deciding whether to reinstate an attorney, we "conduct an independent review of the entire record; although we consider a

3

panel's recommendation, we are not bound by it." *In re Tigue*, 960 N.W.2d 694, 699 (Minn. 2021). When an attorney orders a transcript, like Klotz did here, we will uphold the panel's findings so long as the record supports them and they are not clearly erroneous. *In re Stockman*, 896 N.W.2d 851, 856 (Minn. 2017).

To be reinstated, the attorney must prove: "(1) moral change; (2) the intellectual competence to practice law; (3) compliance with the conditions of suspension; and (4) compliance with the requirements of Rule 18, RLPR. *In re Mose (Mose III)*, 993 N.W.2d 251, 261 n.5 (Minn. 2023). We further weigh four additional factors when considering reinstatement: "the attorney's recognition that the conduct was wrong, the length of time since the misconduct and suspension, the seriousness of the misconduct, and any physical or mental pressures susceptible to correction." *Id.* Because the key issue here is whether Klotz has demonstrated the requisite moral change, we focus on that requirement.

In determining whether to reinstate an attorney, "[s]howing a moral change is the most important factor." *Stockman*, 896 N.W.2d at 857. In general, "to prove moral change a lawyer must show remorse and acceptance of responsibility for the misconduct, a change in the lawyer's conduct and state of mind that corrects the underlying misconduct that led to the suspension, and a renewed commitment to the ethical practice of law." *In re Mose (Mose II)*, 843 N.W.2d 570, 575 (Minn. 2014). Evidence of moral change must come from "an observed record of appropriate conduct" and "the [attorney's] own state of mind and his values." *Stockman*, 896 N.W.2d at 857 (citation omitted) (internal quotation marks omitted).

4

Here, the panel made thorough findings in evaluating Klotz's remorse and acceptance of responsibility for his misconduct, his change in conduct and state of mind, and his renewed commitment to the ethical practice of law. Ultimately, the panel concluded that Klotz did not undergo the requisite moral change that would allow him to practice law.

*Remorse and Acceptance of Responsibility for the Misconduct*

To establish a moral change, Klotz must first prove that he "show[s] remorse and acceptance of responsibility for the misconduct." *Mose II*, 843 N.W.2d at 575. The panel determined that Klotz did not express the requisite remorse and acceptance of responsibility for his misconduct. Klotz contends that the record, as a whole, shows that he expressed remorse and accepted responsibility.

The panel found that even though Klotz expressed remorse to his witnesses, the actual remorse that Klotz conveyed failed to fully consider the totality of his misconduct, and the evidence showed that Klotz felt a general sense of remorse overall for having been suspended. Notably, the panel found that Klotz's inconsistent statements and minimization of his conduct at the hearing countered any expressions of remorse and acceptance of responsibility for his misconduct.[1]

---

[1]  We acknowledge that Klotz challenged some of the findings regarding his moral change, such as that Klotz failed to disclose to "several" witnesses the nature of his misconduct until shortly before the reinstatement hearing, that Klotz excused his misconduct as not as "nefarious" as it seemed, or that Klotz continues to view his misconduct as an "accounting mistake." But even if these findings are clearly erroneous, as the dissent contends, they do not undermine the panel's other factual findings and overall determination that Klotz did not demonstrate the requisite remorse or accept responsibility for his misconduct.

The panel addressed the witnesses' testimony regarding Klotz's remorse and acceptance of responsibility. The panel found that even though the witnesses' testimony was credible, based on Klotz's own testimony and demeanor at the hearing, the panel did not find that Klotz's statements to his witnesses that he accepted responsibility or expressed remorse for his conduct were credible. Specifically, the panel found that even though one witness's testimony was helpful and credible, it was not enough to overcome the panel's direct observations regarding Klotz's behavior.

Klotz contends that the panel erred because it did not view the evidence of his remorse as a whole. Klotz emphasizes his own transparency and honesty about his misconduct. Yet the panel found that Klotz's testimony regarding accepting responsibility for his misconduct or expressing remorse was not credible. The record supports these findings, and we defer to the panel's credibility determinations and findings. *In re Mose (Mose I)*, 754 N.W.2d 357, 362 (Minn. 2008); *Tigue*, 960 N.W.2d at 701.

The record supports the panel's finding that Klotz did not express the requisite remorse or accept responsibility because he minimized his misconduct.[2] The panel found that Klotz minimized his misconduct when he referred to his dishonesty toward the

---

[2] Klotz relies on the referee's April 3, 2017 findings and recommendation from his disciplinary hearing. In 2017, we acknowledged that Klotz's remorse was a mitigating factor but did not heavily weigh it. *Klotz*, 909 N.W.2d at 340. Klotz contends that this finding shows that Klotz was remorseful for his conduct, and the panel would have to find that the earlier remorse finding was wrong or that he had become less remorseful. The panel focuses on the attorney's mental state at the time of the reinstatement hearing, however. *In re Trombley*, 947 N.W.2d 242, 247 (Minn. 2020). Given the several-year-delay between the referee's findings and the reinstatement hearing, the panel appropriately evaluated and determined Klotz's present-day remorse at the time of the reinstatement hearing.

Director as an "accounting mistake." *See In re Holker*, 765 N.W.2d 633, 638 (Minn. 2009) (finding that because the petitioner had minimized his misconduct, his showing of remorse was not credible). We acknowledge that Klotz referred to his misconduct as an "accounting mistake" when describing how he used to think of it. The comments regarding Klotz's attitude *before* the reinstatement hearing should not be considered. *See In re Dedefo*, 781 N.W.2d 1, 9 (Minn. 2010) (holding that the proper inquiry is not whether the petitioner has undergone a moral change before the suspension or immediately subsequent; instead, the court looks at the petitioner's mental state and values at the time of the reinstatement hearing).

Nevertheless, we note that even if Klotz used "accounting mistake" to refer to his thoughts regarding his misconduct *before* the reinstatement hearing, Klotz used the word "mistake" at other points during his testimony, which shows how he *currently* views his misconduct. For example, Klotz stated that he called P.C. after he realized his "mistakes" and that he drew up false records to the Director to hide his mistakes. Notably, Klotz never acknowledged that he intentionally put a client's money into his business account or spoke of this misconduct as "misappropriation" until cross-examination. Calling intentional misappropriation of client funds and intentional creation of false records to disguise misconduct a "mistake" certainly minimizes Klotz's dishonesty.

Moreover, Klotz minimized the seriousness of his repeated misconduct in other ways. For instance, Klotz explained that his dishonesty toward the Director—lying to the Director and covering up his misconduct with a false document—was "the path of least resistance." And Klotz continued to give context for this misconduct. He suggested that

7

part of his dishonesty toward the Director stemmed from their written communication, which made his dishonesty "a little easier" than if he had personally spoken with someone. He stated that he wanted "people to understand the context, that it wasn't like [he] was on the phone with an investigator and lying." Additionally, Klotz suggested at the reinstatement hearing that, regarding his misconduct toward D.R.M., he had likely mailed out her complaint. This statement is contrary to Klotz's testimony (and what the referee found) at his suspension hearing—that Klotz never actually mailed out the complaint. These are only some of the examples showing that Klotz minimized and did not recognize the seriousness of his misconduct throughout the reinstatement hearing.

Furthermore, the panel found that Klotz did not demonstrate remorse for the improper loans to clients, in part because Klotz never apologized to them and testified that he did not even know their names. And in response to his misconduct regarding D.R.M., Klotz noted that he did not neglect her case because she was unrealistic with her timeline expectations. In doing so, Klotz shifted the blame of the misconduct to D.R.M. This shift shows a lack of remorse and acceptance of responsibility for the client neglect. *See Holker*, 765 N.W.2d at 638 (finding that the petitioner's shifting of blame to others made his supposed acceptance of responsibility less credible). The record supports these findings.

*Change in Conduct and State of Mind*

Next, Klotz must prove "a change in his conduct and state of mind that corrects the underlying misconduct that led to the suspension." *Stockman*, 896 N.W.2d at 859 (citation omitted) (internal quotation marks omitted). The panel determined that Klotz did not establish a change in his conduct and state of mind. The panel found that even though

8

Klotz claimed to have identified and corrected his tendencies that led to his misconduct, he actually demonstrated those tendencies in his testimony. For example, the panel found that much of Klotz's testimony "sounded arrogant and lacking in humility." Klotz did not challenge this finding. In our review of the record, we see examples of this attitude, an attitude that Klotz admitted contributed to his misconduct in that he was reluctant to ask for help or to admit that he had undertaken more than he could handle.[3]

The panel also found that, in response to the panel's questions about whether he could assure the panel that he would not engage in misconduct again, Klotz provided a "rambling" response and could not promise or guarantee that he would not engage in the type of dishonest misconduct—lying, falsifying documents, and misappropriating client funds—that led to his suspension. Because the record supports this finding, we defer to the panel's credibility determinations and findings. *Mose I*, 754 N.W.2d at 362.

Additionally, the record shows that the witness testimony did not demonstrate that Klotz had changed his conduct and state of mind. The witnesses testified that Klotz had reflected on his shortcomings and had thought about how to be a better person. But the witnesses generally focused on the circumstances that led to Klotz's dishonesty, such as

---

[3] Here, the panel had the opportunity to evaluate Klotz's demeanor and the import of his explanations and assertions. For example, Klotz said, "I know this is kind of like a pat on my own back kind of thing" before he asserted that he handled more than 1,000 matters and that from those matters, only one client, D.R.M., was upset with him. Additionally, Klotz boasted that he was part of a "select few" and an "inner circle" of lawyers working on Children in Need of Protection Services (CHIPS) cases and that he was the "go-to person" for court administration on CHIPS cases. He also claimed that he always had a lot of matters open at the public defender's office and that he handled them "very well." These are a few examples that support the panel's determination that Klotz did not prove a change in his state of mind that had led to his previous misconduct.

9

the external factors occurring in his life at the time of the misconduct, instead of his dishonest and negligent misconduct itself. For example, the panel made several findings regarding Klotz's therapist, which Klotz does not challenge. Klotz's therapist testified that Klotz has shifted his focus from just thinking about his career to thinking about who he is as a whole person. The panel, however, found that the therapist's testimony did not address whether Klotz has gained insight or learned through therapy how to be an ethical lawyer who does not lie, who does not neglect his clients, and who does not misappropriate client funds by mismanaging trust accounts. Most importantly, although the panel found one witness's testimony regarding Klotz's change of conduct helpful, the testimony of the witnesses was not sufficient to overcome the panel's direct observations of Klotz.

*Renewed Commitment to the Ethical Practice of Law*

Finally, the panel concluded that Klotz did not demonstrate a renewed commitment to the ethical practice of law.[4] The panel made a series of findings about Klotz's proposed mentoring and professional network as possible evidence of a renewed commitment to the ethical practice of law. The panel ultimately concluded that his mentoring and professional network was too vague and undefined, so the panel did not give much weight to it in determining whether Klotz has demonstrated a renewed commitment to the ethical practice of law. Klotz does not challenge these findings.

---

[4]     We acknowledge that Klotz has a concrete plan to continue therapy and testified that he will reach out to other friends and colleagues to ask for their support if he is reinstated. Although this general plan represents a good step in returning to the ethical practice of law, it falls short of a plan that shows that Klotz will not again engage in the type of misconduct that led to his suspension.

10

We do not require that an attorney show an airtight plan to return to the practice of law; rather, "an attorney's plan to return to the practice of law or implement systems to avoid future misconduct are factors that may be relevant to whether an attorney has shown a renewed commitment to the ethical practice of law." *In re Severson*, 923 N.W.2d 23, 32 (Minn. 2019). In *Mose II*, the petitioning attorney's disciplinary history involved client neglect, failure to follow through on commitments, and failure to represent his clients diligently. 843 N.W.2d at 576. We concluded that the petitioning attorney needed to "provide evidence of a deliberate plan to return to the practice of law and have systems in place to avoid future misconduct." *Id.*

Here, Klotz's misconduct included client neglect and a failure to represent his clients diligently, as well as misappropriation of client funds and trust fund mismanagement. Even though Klotz has expressed that he is trying to change—by understanding what led to his misconduct—Klotz has not shown a renewed commitment to the ethical practice of law.

The record supports the panel's findings (that Klotz does not challenge) that Klotz did not have a formal mentor selected,[5] and that most of the proposed members in his professional network were not peers in the legal profession who could give him objective advice regarding practice management, trust account management, or dealing with his

---

[5] Klotz generally mentions two possible mentors, but he does not provide additional details, and neither mentor submitted an affidavit nor testified at the reinstatement hearing. The possible mentors were not identified as witnesses in the current petition because Klotz "had not spoken to them in some time." He also said that he had not advised the two that he had withdrawn his initial petition.

obligations under the Minnesota Rules of Professional Conduct—all of which contributed to the misconduct that led to his suspension.[6]

Klotz bears the burden of proof to prove by clear and convincing evidence that he meets the requirements for reinstatement. Klotz minimized his misconduct and failed to accept responsibility for the misconduct. Even though Klotz's witnesses provided positive testimony, the panel found that their testimony was not enough to outweigh his own testimony. The panel made many findings about whether Klotz changed his conduct and state of mind that led to the underlying misconduct; most critically, the panel found that Klotz's testimony was not credible. Notably, the panel determined that Klotz has not demonstrated a renewed commitment to the ethical practice of law, and Klotz does not challenge those findings.

Based on our independent review of the record, we conclude that Klotz did not meet his heavy burden of proving, by clear and convincing evidence, that he has undergone the requisite moral change. Accordingly, we deny his petition for reinstatement.

Petition denied.

PROCACCINI, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.

---

[6]     Klotz testified that, if reinstated, he would neither practice civil law again nor "have anything to do with trust accounts." This limitation of future practice to criminal law, however, does not alleviate our concerns that Klotz's identified system of support is too disconnected from the practice of law and undefined to demonstrate a renewed commitment to the ethical practice of law.

ANDERSON, Justice (dissenting).

Petitioner Adam W. Klotz has not practiced law since 2018 when we suspended him for misappropriating client funds, dishonesty toward the Director of the Office of Lawyers Professional Responsibility (Director), creating a false and misleading document, and neglecting and lying to clients. *In re Klotz*, 909 N.W.2d 327, 330–31, 335 (Minn. 2018). During the time that Klotz has not practiced law, he has started therapy, taken several continuing legal education courses related to the area of misconduct, and worked to understand what led him to commit professional misconduct.

Klotz now seeks reinstatement to the practice of law. The Director primarily opposes Klotz's reinstatement petition because the Lawyers Professional Responsibility Board panel concluded that Klotz should not be reinstated because he did not demonstrate the requisite moral change. I disagree. I conclude that the record shows that Klotz demonstrated the requisite remorse and acceptance of responsibility, a change in conduct, and a working plan to return to the ethical practice of law. Because I would grant Klotz's petition for reinstatement, subject to probation conditions regarding Klotz's professional support system and the type of law that Klotz can practice, I respectfully dissent.

In reinstatement cases, we "independently review the entire record," and "consider, but are not bound by, the panel's recommendations." *In re Trombley*, 947 N.W.2d 242, 245 (Minn. 2020) (citations omitted) (internal quotation marks omitted). Because Klotz ordered a transcript, the factual findings of the panel must have support in the record and the factual findings must not be clearly erroneous. *In re Mose*, 843 N.W.2d 570, 573

(Minn. 2014).  That said, "we have rejected a panel's factual finding that had some support in the record when the overwhelming evidence presented at the hearing shows the contrary."  *Trombley*, 947 N.W.2d at 245 (citation omitted) (internal quotation marks omitted).

A petitioning attorney seeking reinstatement must prove that he has undergone "moral change."  *In re Stockman*, 896 N.W.2d 851, 856 (Minn. 2017).  Critically, we must be assured that the petitioning attorney "has undergone such a moral change as now to render [the petitioner] a fit person to enjoy the public confidence and trust once forfeited."  *In re Tigue*, 960 N.W.2d 694, 700 (Minn. 2021) (alteration in original) (citation omitted) (internal quotation marks omitted).  A panel determination that a petitioner lacks moral change because of a lack of credibility cannot be upheld if the facts and circumstances prove moral change.  *Trombley*, 947 N.W.2d at 250.  Here, I conclude that Klotz has demonstrated the requisite moral change.  Consequently, I would reinstate him to the practice of law, subject to probation conditions.

*Remorse and Acceptance of Responsibility for the Misconduct*

Klotz must prove that he "show[s] remorse and acceptance of responsibility for [his] misconduct" in order to demonstrate moral change.  *Mose*, 843 N.W.2d at 575.  Shifting blame to another or minimizing misconduct can make a purported acceptance of responsibility less credible.  *See In re Holker*, 765 N.W.2d 633, 638 (Minn. 2009).  The panel found that Klotz failed to accept responsibility for his actions and minimized his misconduct.  Klotz challenges a number of the panel's findings and argues that the evidence

at the hearing, as a whole, shows that he proved by clear and convincing evidence that he accepted responsibility and demonstrated remorse. I agree with Klotz.

The Director contends that Klotz should not be reinstated because he did not show by clear and convincing evidence that he accepted responsibility for his actions. The panel found that Klotz did not accept responsibility because Klotz did not disclose the full details of his misconduct to *several* of his witnesses until shortly before the reinstatement hearing. This finding is clearly erroneous. Klotz shared the details of the misconduct with all but one of his witnesses well in advance of the reinstatement hearing. Moreover, every witness, including Klotz, testified that Klotz took sole responsibility for his actions and did not blame anyone else. Accordingly, I would conclude that the panel inappropriately relied on this fact in determining that Klotz failed to accept responsibility for his actions.

The Director also argues that Klotz failed to come to terms with the impact of the wrongfulness of his misconduct because he minimized his conduct toward the Director, calling his actions a "mistake," and failing to use the word "misappropriation" to describe his misconduct. The panel found that Klotz's testimony showed that he minimized his misconduct, in part based on these findings. This conclusion, too, however, also rested on partially erroneous findings. First, the panel found that Klotz had excused his conduct by saying it was not as "nefarious" as it seemed. There is no support in the record that Klotz made that statement. Second, the panel focused on Klotz's characterization of his misconduct as an "accounting mistake." In doing so, the panel improperly considered Klotz's previous thoughts in finding that he minimized his misconduct. We have held that the proper inquiry into remorse consists of looking at the petitioner's "mental state and

values" at the time of the reinstatement hearing. *In re Dedefo*, 781 N.W.2d 1, 9 (Minn. 2010). Klotz did at times call his misconduct an "accounting mistake," but he only did so when referring to how he viewed his misconduct *at the time he committed it*. Accordingly, this testimony should not bear on the panel's findings regarding Klotz's mental state at the time of the hearing.

The court brushes aside the panel's findings, explaining that even if Klotz did not use the phrase "accounting mistake," Klotz still minimized his misconduct by calling it a "mistake." I disagree. *Black's Law* defines "mistake" as "[a]n error, misconception, or misunderstanding; an erroneous belief." *Mistake*, *Black's Law Dictionary* (11th ed. 2019). Klotz's misconduct was certainly the result of an error in judgment. But the word "mistake" does not refer *only* to unintentional actions. I concede that his conduct was not merely a mistake and if Klotz had exclusively referred to his actions as mistakes, I would consider it a greater cause for concern. But that is not what happened here. While testifying, Klotz repeatedly used the word "misconduct" in discussing the reasons for his suspension. But he also called his behavior "wrong," admitted that he "lied," and transparently laid out the actions that led to his misconduct and subsequent suspension. The panel's determination and the court's conclusion that Klotz minimized his misconduct and was not remorseful does not take into consideration the entire record. I conclude that the "overwhelming evidence" from the hearing shows that Klotz demonstrated, by clear and convincing evidence, that he accepted responsibility and expressed remorse for his misconduct. *See Trombley*, 947 N.W.2d at 245.

*Change in Conduct and State of Mind*

The second requirement of moral change that a petitioner needs to prove is that he has undergone a "change in [his] conduct and state of mind that corrects the underlying misconduct that led to the suspension." *Mose*, 843 N.W.2d at 575. The panel found that Klotz had not demonstrated a change in conduct or state of mind in part because his testimony "sounded arrogant and lacking in humility." We generally defer to the panel's credibility determinations and findings. *Id.* at 573. But, when the panel fails to make specific findings about a petitioning attorney's credibility and we find some of the panel's findings to be clearly erroneous, it can "create doubt about the Panel's ultimate recommendation." *Dedefo*, 781 N.W.2d at 9. Although the court points to Klotz's testimony describing the number of clients he worked for and the type of work that he did as an attorney, it wrongly posits Klotz's explanations of the conditions giving rise to his misconduct as sufficient support for the panel's determination that Klotz sounded arrogant. Crucially, the panel did not point to specific instances in which Klotz acted arrogantly. Arrogance, like beauty, is in the eye of the beholder; it is entirely possible that a petitioning attorney may show remorse and moral change and also legitimate pride in accomplishment.

Klotz has shown personal growth in the approximately 5 years since he was suspended. He withdrew his initial petition for reinstatement based on the Director's concern with his progress, and he accepted the Director's recommendation that working with a therapist could help resolve the underlying issues that led to his misconduct. For example, leading up to his suspension, Klotz tended to take on too much work, which led him to neglect clients. He also acted dishonestly when he tried to cover up his misconduct.

D-5

But throughout his testimony, Klotz expressed self-awareness about needing to ask for help and not engaging in that dishonest behavior again.

Furthermore, several witnesses testified about Klotz's changed behavior. His therapist explained that Klotz had an improved ability to handle stress. Crucially, the therapist stated that Klotz has undergone a "really specific behavioral change" that has allowed him to recognize when he has the capacity to manage additional complications in his life. Also, Klotz's neighbor testified that he believed Klotz had identified the cause of his misconduct and was in "a different spot" at the time of the reinstatement hearing. Yet the panel found that even though Klotz's neighbor was a credible witness, because he was not a mental health professional, he was "not qualified to express an expert opinion" on whether Klotz had undergone moral change. The panel found that his testimony was only "minimally helpful."

We have never held that a suspended attorney must produce an "expert" on moral change, and this added "expert" requirement is concerning. I do not discount the value of an expert witness, but I reject the conclusion that only "experts" (however defined) are the palace guard in determining whether moral change has occurred. A neighbor or family member might well have a much deeper, and more accurate, understanding of moral change, if any, in the petitioning attorney than an expert with more limited exposure to the attorney. Credible testimony that Klotz had underwent a change in conduct was therefore erroneously discounted here. Although I acknowledge the existence of some contrary evidence in the record, I conclude, on balance, that Klotz showed by clear and convincing

evidence that he had a change in conduct and state of mind that corrected the underlying misconduct of client neglect and dishonesty.

*Renewed Commitment to the Ethical Practice of Law*

A petitioning attorney "should provide evidence of a deliberate plan to return to the practice of law and have systems in place to avoid future misconduct." *Mose*, 843 N.W.2d at 576. We have never held, however, that a petitioner must secure employment conditioned on reinstatement or that other lawyers must testify at the reinstatement hearing. *Id.* (holding that a suspended attorney did not need to have a job available to prove he had an adequate plan to return to the practice of law). Yet, here, the panel weighed both factors heavily in finding that Klotz did not demonstrate an adequate commitment to the ethical practice of law, and it overlooked the support network Klotz has set up to avoid future misconduct. A plan to return to the ethical practice of law will look different for each attorney petitioning for reinstatement. *In re Severson*, 923 N.W.2d 23, 32–33 (Minn. 2019) (explaining that "our precedent reflects a more nuanced approach, accounting for each petitioning attorney's misconduct and circumstances when considering whether moral change has been proven").

The Director criticizes Klotz's plan to return to the practice of law, noting that his plan is focused on relying on others rather than making appropriate changes himself. Klotz explained that, if reinstated, he would focus on asking for help and placing guardrails to ensure he avoids future misconduct. I conclude that Klotz has shown that he has a robust system in place to avoid future misconduct through his commitment to lean on his support network, in stark contrast to his previous independent attitude. Klotz testified that he plans

to have regularly scheduled check-ins with his former neighbor to discuss his professional life. He and his wife, also an attorney, have said that they will intentionally share with each other their work challenges and other stressors.

To assuage any concerns that Klotz would not have the assistance of other lawyers, I would impose on Klotz, as a condition of his probation, that Klotz show that he is in regular communication with attorneys in his practice area that could guide him and provide support as he reenters the profession. Notably, we have previously imposed these conditions on reinstated attorneys. *Dedefo*, 781 N.W.2d at 12 (holding that the attorney must be supervised by a licensed Minnesota attorney as a condition of reinstatement); *Severson*, 923 N.W.2d at 35–36 (same). Overall, it is clear that Klotz has sought, and will continue to seek, others in his life who have made it known that they would help him. This plan shows that Klotz has worked to identify the sources of his misconduct and demonstrated his commitment to reform.

In conclusion, the panel in this case seemed to be searching for talismanic language from Klotz (language that we have never identified or specifically required) that would demonstrate a moral change. I conclude that the evidence in the record shows that Klotz has undergone a moral change. In the more than 5 years since Klotz was suspended, he has experienced significant personal growth and prepared himself for a return to the ethical practice of law. And to address any concerns regarding Klotz's future practice, I would reinstate Klotz subject to limitations on his practice—a ban on solo practice, a regimented mentorship with another attorney in the same practice area, and significant supervision. If Klotz were reinstated, we could reasonably conclude that his clients could "submit their

most intimate and important affairs to him with complete confidence in both his competence and fidelity." *Severson*, 923 N.W.2d at 29 (citation omitted) (internal quotation marks omitted). For these reasons, I respectfully dissent.

*   *   *

At its core, the purpose of attorney discipline is to "protect the public, safeguard the judicial system, and deter future misconduct by the disciplined attorney and other attorneys." *In re Severson*, 860 N.W.2d 658, 671 (Minn. 2015). We are to be concerned with "whether the petitioner will likely recommit the conduct that got him suspended" in the first place. *Tigue*, 960 N.W.2d at 711 (Thissen, J., dissenting). Therefore, we must consider the specific misconduct that gave rise to the petitioner's suspension and determine, if the petitioner were to be reinstated, whether we are confident that he would not repeat that misconduct. *See Mose*, 843 N.W.2d at 575.

We suspended Klotz for misappropriating client funds, dishonesty toward the Director, creating a false and misleading document, and neglecting and lying to clients. Consequently, we must decide whether we are confident Klotz will not replicate that misconduct. In making this determination, we must keep in mind any conditions we impose on Klotz's practice of law. Klotz must demonstrate moral change when it comes to his misconduct that involved dishonesty or "moral turpitude." *See Tigue*, 960 N.W.2d at 715–16 (Thissen, J., dissenting). His dishonesty toward the Director, creation of a false and misleading document, and lies to clients all are dishonest acts. And, as demonstrated above, he has shown moral change when it comes to these instances of misconduct.

In order to be reinstated, a petitioner bears the burden of proving "moral change."

*Stockman*, 896 N.W.2d at 856.  In my view, Klotz has met this burden.


THISSEN, Justice (dissenting).

I join in the dissent of Justice Anderson.